HAYDEN, *Plaintiff in Error*, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY.

Division One, November 12, 1894.

1. Railroad: PUBLIC CROSSING: CONTRIBUTORY NEGLIGENCE. Although the servants of a railroad in charge of its train are negligent in failing to give signals at a public crossing and in permitting high grass to grow on its right of way, yet the company will not be liable for the death of a person killed on such crossing where the evidence shows he was negligent in not looking over the grass for the approaching train.

2. Practice: CONTRIBUTORY NEGLIGENCE: ANSWER: WAIVER. Objection to an answer, because it fails to charge any particular act of contributory negligence, comes too late when made for the first time on appeal.

*Appeal from Monroe Circuit Court.*—HON. T. H. BACON, Judge.

AFFIRMED.

*R. B. Bristow* for plaintiff in error.

(1) The traveler had the same right upon the crossing as the train had, and it was as much the duty of the train men to keep a lookout as the traveler, enhanced by the greater danger from the machinery used by the defendant. *Eswin v. Railroad*, 96 Mo. 290; *White v. Railroad*, 34 Mo. App. 57. (2) The defendant was negligent in permitting a mudhole in the roadway on its crossing, and to permit a broken wagon to remain in the roadway that compelled the traveler to go around it, which not only impeded his passage but forced him in a position where the view was more obstructed. *Tetherow v. Railroad*, 98 Mo. 74. (3) The defendant was negligent in approaching this crossing in not sounding whistle or bell, and on that the plaintiff was entitled to go to the jury. *Murray v. Railroad*, 101 Mo. 236; *Hanlon v. Railroad*, 104 Mo. 388. (4) The defendant was guilty of the grossest kind of negligence to allow prairie grass seven feet high to grow on its right of way close up to the roadbed and up to and adjoining the fence of the public road, so shutting out the view that a traveler on the highway could not see the approaching train until he was up on the roadbed, too late to avoid the fatal collision. *Petty v. Railroad*, 88 Mo. 306; *Kelly v. Railroad*, 88 Mo. 534. (5) If a company permits brush, etc., to grow on its right of way and fails to give signals, it is guilty of negligence. 80 Ill. 339; 87 Ill. 78; 70 N. Y. 119.

*Jackson & Montgomery* for defendant in error.

(1) The plaintiff's husband was guilty of contributory negligence in failing to look and listen before he attempted to cross the railroad track, and his failure to do so being a proximate cause of his death, his widow can not recover. *Harlan v. Railroad,* 64 Mo. 480; *Fletcher v. Railroad,* 64 Mo. 484; *Turner v. Railroad,* 74 Mo. 602; *Stepp v. Railroad,* 85 Mo. 229; *Fox v. Railroad,* 85 Mo. 679; *Taylor v. Railroad,* 86 Mo. 458; *Boyd v. Railroad,* 105 Mo. 371. (2) If deceased only looked and listened at a place where he could not discover a train, he was guilty of contributory negligence which prevented a recovery. He should have put himself in a position where he could have discovered the approaching train. *Turner v. Railroad,* 74 Mo. 602; *Hixon v. Railroad,* 80 Mo. 336; *Moberly v. Railroad,* 98 Mo. 183. (3) The men running the train had the right to presume that a traveler would use ordinary care, would heed the usual signals, and would not pass upon the track in front of an approaching train. *Bell v. Railroad,* 72 Mo. 50. (4) It was the deceased's duty to look and listen notwithstanding a failure to give proper signals. *Henze v. Railroad,* 71 Mo. 636; *Harlan v. Railroad,* 64 Mo. 480; *Zimmerman v. Railroad,* 71 Mo. 476; *Purl v. Railroad,* 72 Mo. 168. Under the above cases the peremptory instruction was properly given.

BRACE, J.—This is an action for damages for the death of plaintiff's husband, who was struck and killed by one of defendant's passenger trains, on a public road crossing about two miles west of Monroe City, about noon on the first day of September, 1891. The petition charges that his death was caused by the negli-

gence of the defendant in allowing prairie grass and weeds to grow upon its right of way around and near said crossing so as to obstruct the view of its tracks and trains; in permitting said crossing to become and remain obstructed with holes and ruts and the wreck of broken wagons and vehicles, so as to delay and impede the quick and safe passage of persons and vehicles over its tracks at said crossing; and in failing to sound the whistle or ring the bell on the approach of its train to said crossing as required by law. The answer was a general denial and a plea of contributory negligence, upon which issue was joined by reply.

At the close of the plaintiff's evidence the defendant demurred to its sufficiency and the court overruled its demurrer. At the close of all the evidence the defendant again demurred to the evidence and the demurrer being sustained, the plaintiff took a nonsuit with leave to move to set the same aside, and the court having refused to set the same aside upon motion duly made thereafter, the plaintiff brings the case here by writ of error.

I. There was substantial evidence tending to prove a failure by defendant's servants managing the train to give the statutory signals required on its approach to the crossing on which the plaintiff was killed, and the only theory upon which the court's action in taking the case from the jury can be sustained, is that the evidence disclosed the fact that the deceased was guilty of negligence which contributed directly to his death.

It appears from the evidence that the deceased was a farmer aged about sixty-four years, somewhat hard of hearing, who lived about five miles southwest of the crossing, on which he was killed, and which was on the road he usually traveled from his home to Monroe City. At the crossing the railroad runs east and west, and

the public road north and south. He was struck by the locomotive of one of defendant's passenger trains going west, from Monroe City, a few minutes behind time, at the rate of about thirty or thirty-five miles an hour, while he was in the act of crossing the track from the south, driving a two horse team hauling a common farm wagon loaded with wood. · He was seated on a spring seat elevated about five and a half or six feet from the ground.

The railroad track from the crossing to Monroe City is on a straight line. At a point about one half mile east of the crossing, the track passes over a sag or drain, towards which the surface of the ground inclines from the east and west. A train in passing west from Monroe City goes down grade to this point, and thence up grade toward the crossing until it reaches a point variously estimated by the witnesses to be from one hundred feet to two hundred yards from the crossing, thence upon a level to the crossing. In the public road, and about the middle thereof, and south of the track about fifteen, twenty, twenty-five or thirty feet there was a mudhole in which, prior to the accident, a wagon loaded with wheat had broken down. On the east side of the public road, on the right of way, and extending from about six feet from the south rail of the track to the railroad fence on the south side of the right of way, there was standing prairie grass about seven feet high, extending eastwardly from the public road and parallel with the railroad track an indefinite distance; and immediately south of the right of way on which the grass on the east side of the public road was standing, was a corn field.

As the deceased with his team and load of wood traveled slowly toward the crossing his view of the railroad track and of any train that might have been running thereon east of him, from Monroe City, was

obstructed by the corn to his right, and though he had
then looked for a train in that direction, he might not
have been able to see it until he had passed the north
line of the corn. Between that line and the high grass
on the right of way, there was a space where the under-
growth was lower than the corn or the high grass,
through which a moving train or some part of it might
have been seen, while passing by such space, if the
deceased had looked, provided the train was within the
lines of that vista, but as the train may not have been
within these lines he may have looked and not seen it.
Nor up to this point is it of much importance whether he
looked or not for a passing train, from which, thus far
in his course, he could have apprehended no danger.
He next entered upon the right of way fifty feet distant
from the line of danger. Immediately before him and
about half way to the danger line, in the hole in the
middle of the road, was a wrecked wagon which it was
necessary for him to pass, and in order to do so he had
to deflect his team to the right, on which side was the
better passway. This passway was ample and not
difficult, but in making it the deceased was brought
nearer to the high grass and upon lower ground than
if he could have kept in the middle of the road. That
his attention should have been directed to this obstruc-
tion and to the management of his team until they
passed it, was but natural, and negligence may not be
predicated of his action in failing to look for a passing
train up to this time, even though the train might have
been then in sight, as there was ample space in which
to stop his team after the fore wheels of his wagon,
nearly over which he sat, had passed the obstruction, a
space of fifteen, twenty, twenty-five or thirty feet,
certainly not less than fifteen feet, between the obstruc-
tion and the track.

  If, as he started up the slight grade to the crossing,

or in passing over a part of this space to the danger line, he failed to look for a passing train, which was then in sight so near the crossing as to threaten danger, and without so looking, passed on to the crossing and was killed, he was certainly guilty of such negligence as would preclude a recovery in the case. The crucial question in the case then is: Could the deceased, after he had passed the obstruction and when he was in a place of safety, fifteen, twenty, twenty-five or thirty feet from the crossing, as the case may have been, with nothing to distract his attention from his situation with reference thereto, have seen the approaching train had he looked to his right therefor?

In order to answer this question, the first fact to be determined is the distance of the train from the crossing at the time that it thus became the imperative duty of the deceased to look for it. The engine must have struck about the front wheels of the wagon, as the deceased was almost instantly killed, and the body cast to the south side of the road. He must have been traveling about three or three and a half miles an hour. The train was traveling ten times as fast, so that when his eyes were fifteen, twenty, twenty-five or thirty feet south of the track, as the case may have been, the train must have been within a distance of one hundred and fifty, to three hundred feet of the crossing. Could he then, by turning his eyes in that direction, have seen the train? The spring seat upon which he was sitting was from five feet and a half to six feet from the ground, his eyes must have been at least two feet higher, the surface of the high grass which then intervened between him and the train was seven feet. The train was either on a level or near it on the descending grade of the track, which could not have been appreciably greater than the descending grade of the surface of the grass, towards the drain over which the track

passed.   So that, his eyes being above the plane of the grass, all the upper part of the train down to within at least seven feet of the track must have been plainly within his view, and as the height of a train of passenger cars is about fourteen feet, it is safe to say that at least one side of the upper one half of the whole train must have been within his view.

It will thus be seen that it was a physical impossibility for the deceased to have failed to see the approaching train, if he had looked in that direction, as it was his duty to do, while yet in a place of safety, and before entering upon the line of danger.   Had he done so, there can be no question that he could, and would, have stopped his team until the train passed, and then crossed over in safety.   But for some unexplained reason he failed to do so.   And thus it is, though the defendant may have been negligent in failing to give the signals for the crossing, and in permitting the high grass to be upon its right of way, yet the deceased having lost his life through his own negligence in failing to discharge the duty imposed upon him by law, in his situation, the plaintiff can not recover for his death. This conclusion we find to be irresistible after a very careful examination of all the evidence, in the consideration of which every reasonable inference in favor of the plaintiff has been made.   Consequently we can not find that the trial court committed error in sustaining the demurrer to the evidence, and in refusing to set aside the nonsuit.

II.   It is suggested in brief of counsel, for the first time in this court, that the answer is too general in failing to charge any particular act of contributory negligence.   No objection to the answer was made in the court below, and it is too late to raise that objection here.   *Haynes v. Town of Trenton*, 123 Mo. 326.   The judgment of the circuit court is affirmed.   All concur.