HURBURT CARNER v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY,
Appellant.—89 S. W. (2d) 947.

Division Two, January 4, 1936.*

E. T. Miller, A. P. Stewart and C. H. Skinker, Jr. for appellant.

*NOTE: Opinion filed at May Term, 1935, September 3, 1935; motion
for rehearing filed; motion overruled November 5, 1935; motion to transfer
to Court en Banc filed; motion overruled at September Term, January
4, 1936.

258

*Charles P. Noell, Charles L. Moore* and *Allen, Moser & Marsalek* for respondent.

BOHLING, C.—This case is pending on rehearing. The original opinion was written by the late Honorable John T. Fitzsimmons, and is here quoted insofar as adopted upon rehearing.

"Appellant Railway Company appeals from an adverse judgment of $30,000 damages, awarded to respondent Carner for the loss of his right forearm and right foot. The verdict of the jury for $50,000 was reduced by the trial court upon a *remittitur*. The principal question for decision is the sufficiency of the evidence. Plaintiff, twenty years of age at the time of the accident, was employed by the firm of Govero Brothers to help unload a car of coal on a spur track at Festus, Missouri. Somewhere near the noon hour on the date in question defendant's engine approached the coal car from the east and attempted to couple onto the east end of the car. In attempting to make the coupling the coal car was moved several feet and plaintiff, who was on the spur track at the west end of the coal car, was run over.

"The petition averred the employment of plaintiff as a laborer for Govero Brothers to help unload coal from the car in question, and alleged several assignments of negligence based upon the charge that defendant moved its engine into and against the coal car without sounding the whistle or ringing the bell or giving plaintiff any warning. The answer charged contributory negligence on the part of the plaintiff in failing to look or listen for the approaching locomotive and in sitting on the spur track near the west end of said coal car. The reply was a general denial.

"The main-line track of defendant runs through Festus, Missouri, in an easterly and westerly direction and is located on the north side of the station. The scene of the accident in question was something over half a mile west of defendant's station. At that point defendant's main-line track is on a high grade. Immediately south of the main-line track is a public road running parallel to the track, and immediately south of the public road is the spur track known

as the brickyard spur. This track was over 1200 feet long. It took off from the main track nearly 1000 feet east of the scene of the accident. It curved and descended from the main track until it reached a level grade and began to run parallel to the main track some distance east of the point of injury.

"A private road about thirty feet long led southwardly from the public road across the spur track to the home of a Mr. Porter. The west end of the coal car which plaintiff had been hired to unload was six to eight feet east of this private road. About fifteen minutes before the hour of noon on August 3, 1928, plaintiff, who had gone to the Porter home for a drink of water, returned along the private road toward the spur track. When he drew near to the track, he left the road and walked northeastwardly toward the northwest corner of the coal car. To use plaintiff's own words he went 'kind of cater-corner' toward the car. This course took him almost across the track and to a point at and to the north side of the west drawhead or coupling of the car. He was between the coupling and the northwest corner of the car. His purpose was to enter the car by climbing a ladder on the north side at the west end and to shovel the scattered coal into the remaining pile. When plaintiff was thus almost in contact with the west end of the car and was between the rails of the track, defendant's freight engine bumped the east end of the car and failed to make an intended coupling. The car rolled about six or eight feet—approximately to the near or east line of the private road—and ran over plaintiff. Defendant admits that the engine crew did not ring the bell or blow the whistle when the engine approached the car. The orders of the crew were to haul from the spur track and add to their freight train a certain empty car which was beyond the partly unloaded coal car, and on the far side of the private road. This operation required them to couple on to the intervening coal car, take it and the empty car to the main line and return the coal car to its place. When the train crew went upon the spur—which was over 1200 feet long—they did not know that the coal car was upon that track. But the defendant's agent, who gave the orders to the train crew knew that the coal car was being unloaded on the spur track and that it had been set there for that purpose.

"By plaintiff's own testimony, no unloading work was being done when he was injured. The two trucks which, during the morning, stood upon the public road and were filled with repeated loads of coal from the car, had gone to Festus. The last truck left about 11:30 A. M., fifteen minutes before the accident. Neither plaintiff nor any one else was in the car. He was the only person about the car, and, as has been said, he was between the rails of the track at the west end of the car when the engine bumped the east end. In view of plaintiff's testimony that there was no one in the car and there

was no truck standing beside the car, the testimony of the engineer and fireman in the cab and of a brakeman on the front running board that they did not see any one in the car or any truck beside the car or any one about the car it cannot be said to be contradictory of plaintiff's evidence.

"It is undisputed that it was an open top coal car, that the top of the sides of the car were eight feet, eight inches above the ground; that the floor was four feet one inch above the ground and that the sides and ends of the car were four feet, seven inches high. It is also unquestioned that the point of vision of engineer Butler, seated in the cab of the locomotive and looking toward the coal car as he drew near to it, was twelve feet, four inches above the 'rail.' The evidence of both sides was that at the time of the accident, the car was only partly unloaded. There was some conflict in the evidence as to how high was the pile of coal remaining in the east end of the car. But in view of the fact that there was no one in the car and that plaintiff was hurt while he was on the ground at the west end of the car, the conflict as to how much coal was yet in the car is immaterial.

"I. Defendant contends that its demurrer to the evidence should have been sustained, first, because plaintiff failed to prove actionable negligence, and, second, under plaintiff's own evidence, he was guilty of contributory negligence as a matter of law.

■ "With reference to the first point, it is settled law in Missouri and substantially in all other states that a railroad company is chargeable with the exercise of ordinary care toward persons who are lawfully upon its tracks or in its cars for the purpose of loading or unloading the cars. [Spotts v. Wabash Ry. Co., 111 Mo. 380, 20 S. W. 190.] And in the exercise of this care, a railroad owes to such persons, if it knows or is chargeable with knowledge of their presence, the duty to give them notice or warning of any movement of cars or trains in the vicinity likely to injure them. [Chicago & Erie Ry. Co. v. Shaw, 54 C. C. A. 77, 116 Fed. 621, cited at page 962 in footnote to Hauenstein v. Traction Co. (229 Pa. 128), 31 L. R. A. (N. S.) 960.] And while there are cases holding that unloaders who ride on a freight car during a switching movement [DeBolt v. Kansas City, Ft. Scott & Memphis Railroad Co., 123 Mo. 496, 27 S. W. 575] or who pass between cars while they are going to or from work [St. Louis-San Francisco Ry. Co. v. McClinton (Ark.), 9 S. W. (2d) 1060] do not come under the protection of the rule stated, we are of opinion that in the instant case, plaintiff, an invitee, about to climb back into the car to resume work, was entitled to the exercise by the railroad company of ordinary care for his safety. [Spotts v. Ry. Co., supra; Chicago & E. Railroad Co. v. Shaw, supra.] An outstanding phase

of the law governing these cases is that a railroad company may not relieve itself from the duty to warn upon the ground that due care does not require it to do more than to act carefully upon appearances. It is not the law that if there is no visible activity that would apprise the railroad of the presence of workmen in a car which has been set out to be loaded or unloaded or which is in process of these operations, the company is excusable for not knowing they were there, if in fact the men are there. [Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S. W. (2d) 543, 1. c. 555; Butler v. Chicago, R. I. & Pac. Ry. Co., 155 Mo. App. 287, 136 S. W. 729.] Each of these was a case in which the plaintiff was doing work in a box car incident to unloading in one case and loading in the other. In the Neal case this court held that it should have been left to the jury to say under the circumstances whether it was negligence for the servants of the railroad company not to peer into the car before they attempted to couple an engine to it. In the instant case the servants of the railroad peered into the coal car and saw no one. We do not say that in addition the servants of defendant should have gone around the car on all sides to see whether plaintiff was in a position of danger. But there is the admission of defendant's freight agent at Festus that, when he gave the order to the freight crew to go upon the spur, he knew that the coal car was being unloaded that day and he did not so inform the crew. There is the further admission that the crew, on approaching the partly unloaded car, did not sound the whistle or ring the bell of the locomotive before they coupled into the car. In view of these admissions and of the other facts in evidence heretofore recited, we are of opinion that upon the issue of actionable negligence (wholly apart from the defense of contributory negligence), it was a question for the jury whether defendant exercised ordinary care toward plaintiff. There was read in evidence the following rule of the company relating to cars in process of loading or unloading; 'Notice must first be given to all persons in or about the car that they are to be moved, and then they must be replaced in the same position found.' And while there was no testimony that plaintiff knew and relied on this rule, and no testimony that defendant's crew knew or were charged with knowledge of plaintiff's position of peril, and while plaintiff was neither a passenger, shipper or employee of defendant, yet the rule fortifies us in the view expressed.''

II. Defendant presents the issue, among others, that plaintiff's evidence that he could not and did not see the approaching locomotive is at variance with the physical facts and not entitled to credence; and, therefore, plaintiff was contributorily negligent as a matter of law in not seeing the approaching locomotive.

''It has been repeatedly ruled that, when the testimony of a wit-

ness upon a material issue is contrary to the physical facts, or when such testimony necessarily relied upon is inherently impossible, or the inferences deducible therefrom are so opposed to all reasonable probability as to be manifestly false, the courts are not bound to stultify themselves by giving credence to such testimony, but will wholly disregard it.'' [Roseman v. United Rys. Co. (Mo. App.), 251 S. W. 104, 106(2), citing cases.]

In Hook v. Missouri Pac. Ry. Co., 162 Mo. 569, 581, 63 S. W. 360, 362, this court said: ''When to look is to see, the mere utterance that one did look and could not see, will be disregarded as testimony by the court [citing cases], and no additional value is to be given to the

DEFENDANT'S EXHIBIT F

utterance because of the fact that a jury, under the direction of the trial court, has predicated a finding thereon. As the law does not permit a witness to blind his eyes to the sight of an approaching train in full view of a crossing he is to pass, neither will the eye of the law become blinded to the true situation of the case merely because

of the absurd statement of a witness or witnesses, 'I looked and could not see,' or the jury's indorsement of it by a finding predicated thereon, when to look was to see.''

Only those obstructions to the view south of the spur track and east of the private road enter as factors on this issue. A number of photographs showing the scene of the accident and area involved were introduced in evidence as exhibits; plaintiff's exhibits having been taken in September and defendant's exhibits in December, 1928. We reproduce one of the several photographs introduced by defendant.

In this exhibit the coal car is the car and the locomotive is of identical size with the locomotive involved in the accident. The man in the photograph is stationed seventeen feet south of the center of the spur track, and the locomotive seventeen feet east of the coal car, or, considering the coal car to be forty-three feet long and stationed six to eight feet east of the crossing, approximately sixty-six to sixty-eight feet east of the crossing. The mound shown south of the man is an unnatural mound, being part of what once had been a brick plant. Immediately north of this mound appears a depression, somewhat below the elevation of the road, and north of it a small mound.

Plaintiff was six feet one and one-half inches tall. Immediately prior to the accident, he had been talking to Mr. Porter at a point approximately thirty feet south of the spur track and somewhat west of the private road. He proceeded in an ordinary walk north along this private road to the spur track, and when asked by his counsel what prevented his seeing the locomotive, stated: ''Well, there is an embankment there and there was a coal car there that knocked my view out.'' The inference of fact to be drawn from this statement is that plaintiff looked but did not see the locomotive. ''That embankment is six or eight feet [high], just the embankment, and there were some weeds on top of that.'' The embankment referred to is what remained of a former brick plant or kiln, and appears at the extreme right of the photograph. ''Q. Now, when you reached the spur track, did you look, or did you not look? A. Yes, sir; I looked.'' He further testified that ''just east of the car [evidently meaning 'south of the car' because if he had been 'just east' of the car he would have had a clear view down the center of the track], you cannot see a thing for the weeds and embankment—and I looked to the east of me and I couldn't see anything, and I went over onto the track. . . .'' Plaintiff testified that the weeds extended right up to the ties; that there was a space of between six to eight inches between the top of the weeds and the side of the coal car; that these weeds were from four to six feet high, not as high as the coal car, and were four feet east of the crossing. Plaintiff introduced testimony that the weeds south of the track had been cut a day or two after the ac-

cident. The only definite testimony in the record, offered by plaintiff through one of defendant's section men, as to the extent of the cutting established that the weeds, which the witness thought were not higher than two feet, had been cut for a distance of about a foot and a half or two feet back from the ties, possibly farther back (although witness stated he would not say how far because he did not know) from the track. A plaintiff is required to remove his case from the field of speculation.

The private road crosses the spur track at a right angle, or practically so, and the spur track is straight for a distance of about 110 feet east of the public road; affording plaintiff, as he approached, a view along the spur track at an angle. The locomotive was traveling slow, five to six miles an hour up to within fifteen or twenty feet of the car, where it slowed down to three or four miles an hour. Thus, the locomotive and plaintiff were traveling at approximately the same rate of speed. The height of the engineer's vision above the rail was twelve feet four inches, and the photographs clearly show the cab of the engine and the smoke stack, etc., as well as the tender to be somewhat higher.

After a careful study of the exhibits and testimony, we think it unescapable that had plaintiff exercised ordinary care when he looked, he would have seen the approaching locomotive. The weeds, according to plaintiff, were four or more feet east of the private road. The top of a weed does not form a solid barrier to vision. Only by reason of their number and height would they prevent one from seeing an object the size of a locomotive. Considering the topography of the area involved, we are unable to perceive, under the record made, how the weeds involved in this cause, commencing four feet east of the crossing, would preclude a view of the locomotive approaching on the track by plaintiff, six feet and one and a half inches tall, as he proceeded north along the private road.

This conclusion is substantiated upon a comparison of the several photographs. The spur track leaves the main line track on a very sharp down-grade, and the exhibits disclose the elevation of the main line to be several feet above that of the spur track. Plaintiff's exhibits do not show any locomotive on the spur track; whereas the locomotive on the spur track is visible in all of defendant's exhibits, embracing photographs showing a man stationed on the private road at different distances from thirty-seven and a half feet to within seventeen feet south of the center of the spur track and with the locomotive at a distance from one hundred and eighty-four feet to within seventeen feet of the coal car. One of plaintiff's photographs was taken from the private road, looking toward the east or northeast, and shows many weeds in full foliage and uncut. The sky-line formed by the main line track is plainly visible above the top of these

weeds. However, in defendant's exhibits showing the locomotive on the spur track, the view (sky-line) of the main line track is cut off by that portion of the photograph showing the locomotive. It follows that since the main line track was within vision in plaintiff's exhibit, a locomotive on the spur track would also have been within view.

Having determined from the physical facts that the locomotive was within the vision of plaintiff as he proceeded north along the private road, plaintiff's failure to see the approaching locomotive when he looked, as he says he did look, constituted negligence as a matter of law directly contributing to his injuries [Kelsay v. Missouri Pac. Ry. Co., 129 Mo. 362, 376, 30 S. W. 339, 343, stating: "It is in vain for plaintiff to say that she looked with any degree of care, and did not see it;" Hook v. Missouri Pac. Ry. Co., supra; Woods v. Moore (Mo. App.), 48 S. W. (2d) 202, 207(9), citing Alexander v. St. Louis-S. F. Ry. Co., 327 Mo. 1012, 1019, 38 S. W. (2d) 1023, 1026(2); and see Hayden v. Missouri, K. & T. Ry. Co., 124 Mo. 566, 573, 28 S. W. 74, 75]; and he is precluded from a recovery on grounds of primary negligence.

Plaintiff seeks to invoke the rule that negligence is not imputable to a person for failing to look out for a danger when, under the surrounding circumstances, the party sought to be charged with it had no reason to suspect that danger was to be apprehended, or when danger does not exist except it be caused by the negligence of another, as precluding a holding that plaintiff was guilty of contributory negligence as a matter of law; and relies on Crawford v. Kansas City Stockyards Co., 215 Mo. 394, 414, 114 S. W. 1057, 1063; Langan v. St. Louis, I. M. & S. Ry. Co., 72 Mo. 392, 398; McQuitty v. Kansas City So. Ry. Co., 196 Mo. App. 450, 194 S. W. 888, and Spotts v. Wabash W. Ry. Co., 111 Mo. 380, 20 S. W. 190. In each of the above cases the injured party received his injuries at a time when he was engaged in the discharge of a task making him an invitee upon the railroad's premises and at a place where he was required or naturally might be expected to be; and the reciprocal obligations to exercise due care on the part of the injured party and the defendant arose under such circumstances. While the rule contended for would have been applicable to plaintiff in the instant case had he been engaged in the performance of his duties, we think these cases do not rule the instant issue; because:

With defendant's locomotive in view, the reciprocal obligations to exercise due care on the part of plaintiff and defendant arose (not after plaintiff passed to immediately behind the coal car, but) while plaintiff was approaching the spur track along the private road. Defendant's employees had the right to assume that plaintiff would not proceed upon the track in such a manner as to receive injury from

the approach of the locomotive. Plaintiff was not then engaged in the performance of his duties, and defendant was not required in the exercise of due care to ascertain perchance that plaintiff had been engaged in work in and about the coal car before it attempted to couple onto the car. We think plaintiff's failure to see the approaching locomotive and his subsequent actions contributed to his injuries to such an extent as to call for the application of the ruling in DeBolt v. Kansas City, Ft. S. S. & M. Ry. Co., 123 Mo. 496, 506, 27 S. W. 575, 578, where the court held that the rule that a railroad owes to those lawfully on its tracks, unloading its cars, active vigilance in protecting them from injuries, does not apply to one not so engaged. While plaintiff was approaching the track he was not authorized, in law, because he had been engaged in unloading the car, to disregard the ordinary precautions of a prudent person under similar circumstances.

The rule contended for by plaintiff is not applicable because plaintiff looked. In the Crawford case, supra, plaintiff, who was in attendance on a shipment of cattle, got into a cattle car, while the train was backing into a stockyards, to help some stock which were down, and while in the act of climbing out of the car was struck by one of the gates of the stockyards, which was open, and injured. In holding that plaintiff was not negligent as a matter of law because he did not look, the court said (215 Mo. l. c. 413): "If the plaintiff saw the gates open he was guilty of negligence in not taking care to avoid coming into collision with them; but the testimony is that he did not see them." Under the physical facts of the instant case plaintiff is chargeable with knowledge of such facts as looking, with ordinary care, would have revealed to him; and, hence, chargeable with knowledge of the approach of defendant's locomotive.

The judgment is reversed and the cause remanded for such proceedings as may not be inconsistent herewith. *Cooley, C., dubitante; Westhues, C.,* concurs.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.