ROBERT W. SCOTT, Appellant, v. JAMES M. KURN and JOHN G. LONSDALE, Trustees of the ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation.—126 S. W. (2d) 185.

Division Two, March 15, 1939.

*Eagleton, Waechter, Yost, Elam & Clark* for appellant.

*J. W. Jamison, A. P. Stewart* and *C. H. Skinker, Jr.,* for respondents.

WESTHUES, C.—Appellant, plaintiff below, filed this suit to recover $50,000 in damages for personal injuries alleged to have been sustained when a passenger train of respondent, Frisco Railway Company, collided with a truck, driven by plaintiff, at a grade crossing in Cuba, Missouri. A trial resulted in a verdict and judgment for defendants and plaintiff appealed. Defendants, James M. Kurn and John G. Lonsdale, are trustees of the defendant, St. Louis-San Francisco Railway Company.

Appellant charged the defendants with primary negligence consisting mainly in the failure to give the statutory warning signals for the crossings in the town of Cuba, and in particular the crossing where the collision occurred. The defendants denied being guilty of any negligence, and pled that the plaintiff was guilty of negligence in driving upon the tracks without taking the precaution of ascertaining whether a train was approaching. The trial court instructed the jury that appellant was bound to exercise the highest degree of care. Appellant seeks a reversal of the judgment and a new trial on the ground that the term "highest degree of care" was erroneously defined in the instruction. Respondents contend that the instruction conforms to the law, and in addition thereto contend that plaintiff, under the evidence, was guilty of contributory negligence as a matter of law, and that therefore appellant is not entitled to a new trial even if the instruction was erroneous.

The facts, as disclosed by the record, are substantially as follows: The main line of the Frisco passes through the town of Cuba in an easterly and westerly direction. To the south of the main line is a switch track which extends some distance east and west of the crossing where the collision occurred. Highway No. 19 runs in a northerly and southerly direction and crosses these tracks at grade in the east part of the village. The collision occurred on the morning of January 19, 1934. Plaintiff was driving a truck north on High-

way No. 19. The passenger train was traveling east. A number of witnesses testified for plaintiff that only one warning signal was given of the approach of the train; that the whistle was sounded when the train approached the town, but not thereafter. Witnesses for the defendant testified that the bell on the engine was ringing and the whistle was sounded at regular intervals as the train approached the point of collision. One witness testified that the whistle was so keen that it hurt his ears and he turned his head to break the sound. A woman testified that she was forced to discontinue her conversation for, what seemed to her, several minutes. This because of the noise of the train and the blowing of the whistle. So we have a sharp dispute over the question of whether defendants were negligent. And even though it appears from the record that the preponderance was on the side of the defendants, yet it was a question for the jury to decide. Witnesses differed as to the speed of the train, which was estimated to have been between thirty and fifty miles per hour. The engineer placed it at about forty-five miles per hour. The train was a regular passenger train called the Blue Bonnet. It was two or three minues late on this morning.

■ Plaintiff had lived in Cuba for many years. For twelve years prior to the collision he had been employed by the Standard Oil Company, and in line of his duties had been about the railroad tracks almost daily and was acquainted with the yards and its surroundings. On the day of the collision he was driving a truck upon which was mounted a gasoline tank filled with gasoline, and was preparing to make deliveries to his customers. About ten feet to the south of the switch track and about fifty feet west of the west line of Highway 19, were located a number of storage tanks mounted upon concrete pillars. On the day in question there was an oil tank car upon the switch track about seventy-five feet west of the west line of Highway No. 19. That was the situation immediately before the collision as plaintiff approached the tracks with his truck. Plaintiff's version of what occurred was stated by him as follows:

"After I had gotten onto Highway 19 and started north about forty feet from the switch track I approached this incline, with my truck in second gear, and watched, and listened for signals. I eased up slow when I got to the top of this grade; I slacked the car up so I could ease out in case an engine was coming and I could stop and be in safety. From the position I was in I could see down about 200 feet west of Highway 19 crossing. At that time the front of my truck was practically right on the south rail of the main line. I could not see 200 feet down the main line until the front of my truck was practically on it, because the tank car obstructed my view. From the front bumper to the back of the seat of my truck it was seven feet ten inches. It is about nine feet from the south rail

of the main line to the north rail of the switch track. I could not see down to the west on the main line until I got past the north rail of the switch track. During all the time I was approaching the main line I was listening and looking for trains, and I did not hear any whistle or bell sounded as I came down there. There was nothing the matter with my hearing. The window on the left side of my cab was lowered from the top, and there was nothing there at all to have prevented me from hearing the whistle or bell if one had been sounded anywhere close to that crossing.

"When I got in the position where I could see about 200 feet up the main line my truck was going about three miles an hour, and I was listening to see whether there was any sign of a train coming, but I did not hear anything at all. I looked and saw nothing, and then proceeded to go ahead over the crossing, and just as I started across there I heard a noise and kinda glanced like that (indicating)—you know, looked ahead of me to see if the traffic was o. k. in front of me—see that the right of way was all right, and the first thing I knowed there she was right on me. I glanced around and there she was on top of me. I looked back up the track and there was no signs—no whistles or bells or anything."

The track to the west was in a straight line for more than eight hundred feet. As plaintiff testified, the distance from the bumper of the truck to the *back* of the seat of the truck, where plaintiff was sitting, was seven feet ten inches. The space between the north rail of the switch track and the south rail of the main line track was nine feet. As mentioned, the tank car was standing seventy-five feet to the west of the highway. Plaintiff testified that he did not stop his truck before he attempted to drive over the crossing. We are of the opinion that these physical facts and the evidence of plaintiff convict him of negligence as a matter of law. It was plaintiff's duty to exercise the highest degree of care. Ordinary care would have required him to look to the west for an approaching train. Plaintiff could have at a glance seen the train in full view, before the front wheels of his truck reached the south rail of the main line track. Note again that there was a space of nine feet between the rails; that plaintiff was sitting in a seat the back of which was less than eight feet from the bumper of the truck; that the tank car was more than seventy-five feet to the west of him. The applicable rule is thus stated in 52 Corpus Juris, 325, section 1901:

"The presence of standing cars at a crossing is a notice of danger, calling on the traveler to exercise the greater care which ordinary caution requires; and where the view of one about to enter upon a railroad crossing is obstructed by standing cars, if he attempts to cross without exercising proper care to look and listen for the purpose of discovering an approaching train as soon as it can be seen,

as immediately after reaching the end of, or passing, the standing cars which obstruct his view, and if, where necessary to do so, he fails to stop to look and listen for the purpose, he is chargeable with contributory negligence precluding recovery, notwithstanding negligence on the part of the railroad company in failing to sound the proper warning signals."

See, also, Wren v. C., B. & Q. Railroad Co., 44 S. W. (2d) 241, l. c. 243 (1, 2); Carner v. St. Louis-San Francisco Railroad Co., 338 Mo. 257, 89 S. W. (2d) 947, l. c. 952; Herring v. Franklin, 339 Mo. 571, 98 S. W. (2d) 619, l. c. 621 (1); Burge v. Wabash Railroad Co., 244 Mo. 76, 148 S. W. 925 l. c. 929 (3, 4); Monroe v. C., & A. Railroad Co., 297 Mo. 633, 249 S. W. 644, l. c. 650 (8). In the latter case this court said:

"This is not a rule of evidence, but a rule of law, 'peremptory, absolute and unbending,' that may not be ignored or evaded by court or jury. It is inflexible and admits of no exceptions. The case rests upon plaintiff's evidence; there is no fact for a jury to find. Plaintiff's view being obstructed, he could neither see nor hear the approaching train. In such circumstances it was his duty, in the exercise of even ordinary care, as we have seen from the foregoing cases, to have stopped his automobile while in a place of safety, so that he might have learned if a train were near at hand before driving into the danger zone."

Also note what was said in the Carner case, supra, 338 Mo. 257, 89 S. W. (2d) 947, l. c. 952 (7):

"Having determined from the physical facts that the locomotive was within the vision of plaintiff as he proceeded north along the private road, plaintiff's failure to see the approaching locomotive when he looked, as he says he did look, constituted negligence as a matter of law directly contributing to his injuries (Kelsay v. Missouri Pac. Ry. Co., 129 Mo. 362, 376, 30 S. W. 339, 343, stating:

'It is in vain for plaintiff to say that she looked with any degree of care, and did not see it.' "

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES C., is adopted as the opinion of the court. All the judges concur.