ALFRED HILTON v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—137 S. W. (2d) 520.

Division One, March 6, 1940.

*T. M. Pierce, Walter N. Davis, Wm. A. Thie* and *Arnot L. Sheppard* for appellant.

*Hay & Flanagan* for respondent.

DOUGLAS, J.—This is an action for damages resulting from personal injuries sustained by respondent when he was struck by the railroad's gasoline motorcar, similar to a handcar, while crossing a track in the switchyards at the Cupples Station properties in St. Louis. Judgment for $9000 was rendered against the railroad. The respondent worked at the Cupples building at Eighth and Poplar Streets and about the other buildings which surround the switchyards. Along Spruce Street are a number of commercial buildings and warehouses which abut the yards. The respondent was employed by the Union Electric Light & Power Company which supplied heat and power to the buildings. The electric company also maintained three tunnels across the yards through which ran water, steam and power lines. The respondent was an inspector and maintenance man for the freight elevators which carried freight from the loading platforms.

Seventh Street bounds the yards on the east. No cross streets intersect the yards as you go west as far as Twelfth Street, which is carried over the yards by a bridge. Poplar Street bounds the yards on the south up to about Ninth Street where it runs into the yards. In addition to a number of switch tracks there are two main-line tracks running through the yards which come from the southwest and make a 45 degree angle to the northeast in order to enter the tunnel leading to Eads Bridge. The opening of the tunnel is under Eighth Street, where it joins Spruce Street. The main-line tracks are numbered 72 and 71 from south to north respectively. On the morning of his injury the respondent was proceeding northwardly across the yards to look after an elevator on the platform of one of the Spruce Street buildings. He first crossed a switch track. Then he crossed track 72 and was proceeding across track 71. He was within one step of clearing it when he was struck. He claimed he neither saw the motorcar approaching nor heard any warning given. The case was submitted on the humanitarian doctrine only.

Appellant contends that respondent made no prima facie case under this doctrine because the respondent could not have been oblivious of the approach of the motorcar on his testimony that he could see 140 feet to the west and that he had looked to the west. To look is to see, the appellant argues, and the respondent will not be heard to deny that he saw the motorcar. This argument finds support in cases involving primary negligence and is used to demonstrate contributory negligence as a matter of law. [State ex. rel. K. C. So. Ry. v. Shain, 340 Mo. 1195, 105 S. W. (2d) 915.] This convenient phrase "to look is to see" is not an accurate expression of the legal implications involved. What is meant is that a person who has testified that he looked and failed to see when from the physical facts in the case it could not be true that he failed to see, then it is conclusive that he was negligent in looking. Under these circum-

stances, we have found such to be negligence as a matter of law. We said in Carner v. St. Louis-San Francisco Ry. Co., 338 Mo. 257, 89 S. W. (2d) 947: ''. . . plaintiff's failure to see the approaching locomotive when he looked, as he says he did look, constituted negligence as a matter of law directly contributing to his injuries, . . . and he is precluded from a recover on the grounds of primary negligence.'' In that case and in others cited by the appellant the question was one of contributory negligence which does not arise in a humanitarian case.

The pertinent question here is whether the respondent was oblivious. We have not ruled that to look is conclusive evidence of seeing. In English v. Wabash Ry. Co., 341 Mo. 550, 108 S. W. (2d) 51, a case on the humanitarian doctrine we found that testimony of looking was merely circumstantial evidence of seeing. Under the facts of that case we held it was a question for the jury to determine whether the respondent was actually seen on the track. And so in this case, it is for the jury to determine whether the respondent actually saw the motorcar when he looked westwardly in spite of his testimony that he did not see it. The respondent's testimony was that before he reached No. 72 he looked to the west and as he was proceeding he looked to the east. It was shown that the tracks come from the southwest and turn to the northeast to enter the tunnel so that when the respondent looked west the car may have been to his rear and out of his vision. In Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47, obliviousness was not an issue so that case is not in point. Nor does the testimony produced by the appellant necessarily impeach respondent's. The operator of the motorcar testified that when the car was some fifty or fifty-five feet from him he saw the respondent looking east at a locomotive coming up on No. 72 and to avoid it he was running and jumping across 72 and onto 71 where he was struck. This witness may not have seen the respondent look to the west but noticed him only while he was looking to the east.

■ We find under the humanitarian doctrine the plaintiff, on his own evidence, has made a case for the jury on a failure to warn. Also when his evidence is considered in connection with the concurring evidence of defendant, which supports the theory on which the plaintiff has presented his case, he has made a case on the other elements submitted. No contradictory evidence of the defendant can be considered in determining this. [Meese v. Thompson, 344 Mo. 777, 129 S. W. (2d) 847; Elkin v. St. Louis Pub. Serv. Co., 335 Mo. 951, 74 S. W. (2d) 600.]

■ It was the duty of the railroad to keep a lookout for persons where the respondent was crossing because public usage in crossing the tracks there was clearly established. There is a crossing tower from which are operated warning gates at the south of the yards where Ninth Street joins Poplar from the south and stops. East of

this tower about eight or ten feet is a building. There was testimony of a path opposite this space between the tower and the building which led to Spruce Street on the north of the yards. The evidence showed that every day and every hour of the day men, women and children would cross. Customers and employees from the Simmons Company city department would cross to the company's warehouse. This usage had continued over a period of as many years as the witnesses had worked about the yards, some about seven years. It was in a busy little community. One of respondent's witnesses described the block at Ninth Street between the north switch track and Spruce Street as "Simmons City." There the buildings house the Simmons Hardware Company, Graham Paper Company, A. & G. Grocery Company, Wheeling Corrugated Company and the Pittsburgh Plate Glass Company. The use described here meets the requirements expressed in English v. Wabash Railway Co., 341 Mo. 550, 108 S. W. (2d) 51, supra. There it was held that the rule of waiver of the right to expect a clear track may be applied to places of limited extent which are continuously used for access to shops, industries and other similar places where a considerable number of people go regularly at certain times.

It cannot be successfully argued from the facts above set out and the inference favorable to the respondent that the humanitarian doctrine should not be applied. The situation described in Knight v. Wabash Ry. Co. (Mo.), 85 S. W. (2d) 392, is not similar and the ruling of that case, that where a person who is *sui juris* negligently moves from a place of safety to a place of danger so close before the engine or car that, by ordinary care, his injury cannot be averted, then there is no room for the play of the humanitarian doctrine, is not applicable. Other cases cited are not pertinent.

The respondent's main instruction after describing the date, place and circumstances of the injury continued as follows: ". . . and if you further find and believe from the evidence that at and prior to the time of the collision of said motorcar with the plaintiff, if so, the plaintiff was approaching and in a position of imminent peril and oblivious thereto, of being struck by said motorcar, and if you find from the evidence that the defendant, by and through its agents and servants, if so, in charge of said motorcar, saw or by the exercise of ordinary care, could and would have seen the plaintiff *approaching and in such position of imminent peril,* and oblivious thereto, if you so find the facts, of being struck and collided with by said motorcar, and if you find from the evidence that the defendant, by and through its agents and servants in charge of said motorcar, could in time, thereafter, by the exercise of ordinary care, . . . have stopped said motorcar, etc. . . .'"

An instruction containing the same words we have italicized which likewise imposed a duty on the defendant when the plaintiff was

only approaching a position of imminent peril was held to be reversible error in Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S. W. (2d) 961. On this point we said at page 970: ''The writer ventures to renew here criticisms recently made of a similar instruction in Perkins v. Terminal Railroad Assn., 340 Mo. 868, 886, 896, 102 S. W. (2d) 915, 924, 930, this because it was thought by some of the judges of this court that the question was not raised by the appellant in that case. It is squarely raised here, and the instruction falls within the condemnation of both the dissenting opinions in the Perkins case. It undoubtedly predicates liability on the failure of appellant's truck driver to avert the collision if he could have done so after seeing, or being bound in the exercise of the highest degree of care to see, the Ford coupe crossing Mill Street, *approaching* and. in a position of imminent peril. That word approaching meant something in the instruction. According to its ordinary meaning it indefinitely extended the field within which vigilance under the humanitarian doctrine was exacted. But the law is that that duty does not arise *until* a situation of peril arises. [State ex rel. Fleming v. Bland, 322 Mo. 565, 572, 15 S. W. (2d) 798, 801.] The use of the word approaching in such instructions was impliedly condemned in State ex rel. Himmelsbach v. Becker, 337 Mo. 341, 347, 85 S. W. (2d) 420, 423, but that was a certiorari case and the question was only one of conflict. The phrase ''coming into a position of imminent peril'' was expressly condemned by the Kansas City Court of Appeals in Lakin v. Chicago, R. I. & P. Ry. Co., 229 Mo. App. 461, 468, 78 S. W. (2d) 481, 485, 95 S. W. (2d) 1245. The question is fully covered in the Perkins case.''

That case bluntly announces that the defendant is under no duty to act before the plaintiff is actually in a position of imminent peril. To say a plaintiff is *approaching a position of imminent peril* expressly denies that he is in present, existing imminent peril. Until a plaintiff is in such a position there is no indication to a defendant of an injury impending so as to invoke the humanitarian doctrine.

But, the respondent argues, when a plaintiff is oblivious then a defendant owes him a duty while he is only approaching a position of imminent peril. That is not the law. A defendant owes no duty to an oblivious plaintiff who is not in a position of imminent peril. Obliviousness may, under the facts of the particular case, tend to create imminent peril which would not exist except for such obliviousness. For instance, when a plaintiff is proceeding obliviously and that fact is or should be apparent to the defendant then the plaintiff may be in imminent peril before he has reached the actual path of danger, in this case the railroad track. The fact of obliviousness thus extends the position of imminent peril beyond the actual path of the vehicle creating the danger. That position, however, is limited to a point where the obliviousness of the plaintiff is or should be apparent.

to the defendant and reasonably indicates an intention on the part of the plaintiff to continue into the path of the vehicle to his injury.

There is no merit in the appellant's complaint about the refusal of certain of its instructions.

For the error in giving the above instruction the judgment is reversed and the cause remanded. All concur.