HERMAN RISCHECK v. FRANK O. LOWDEN, JAMES E. GORMAN and
JOSEPH B. FLEMING, Trustees of Chicago, Rock Island & Pacific
Railway Company, a Corporation, and ELMER BRITTINGHAM and
WALTER REED, Appellants.—147 S. W. (2d) 650.

Division One, February 14, 1941.

*Sullivan, Reeder, Finley & Gaines* and *Hogsett, Murray, Trippe,
Depping & Houts* for appellants.

428

*Mark D. Eagleton* and *Atwood & Atwood* for respondent.

DOUGLAS, J.—Plaintiff was injured when the small truck which he was driving was struck by one of defendants' trains. He recovered judgment for $9000 for the primary negligence of defendants in failing to warn of the train's approach.

The chief question for decision is whether plaintiff was guilty of contributory negligence as a matter of law so as to preclude any recovery on his part. It has become axiomatic, in determining this question, that the evidence for plaintiff must be accepted as true and

plaintiff must be allowed the benefit of every reasonable inference in his favor that may be drawn from all the evidence without any regard of defendants' contrary evidence.

With this rule in mind we find from the record that in December, 1937, plaintiff was driving his small truck northwardly on Lackland Road, a fifteen-foot gravel road in St. Louis County. He lived in the neighborhood and for years he had traversed this road. He was approaching the grade crossing where defendants' railroad, running east and west, crosses Lackland Road when he noticed a neighbor's automobile in a small ditch where it had slid from the road. This automobile was in charge of two brothers named Jung. Plaintiff stopped his truck on the road about seventy-five feet south of the railroad crossing. He got out and helped the Jung boys get their automobile back on the road. As he returned to his truck he looked to the east to see if there was any smoke from an approaching train, but saw none. Then he got into his truck, into the small cab which encloses the driver's seat, and slowly resumed his journey northward. When he had traveled about sixty feet and the front of his truck had reached a point about twelve or fifteen feet south of the south rail of the track he came to a full stop. The cab of his truck is seven feet to the rear so that he was then 19 to 22 feet south of the south rail. He was entirely familiar with the crossing and had been over it daily for a period of years. He was also familiar with the train schedule in relation to the crossing. The surrounding country was open, farming country. He looked first to the west and could see along the track in that direction for about 1000 to 1500 feet, probably farther. Then he looked to the east. The track immediately east of the road was laid through a cut. His view in that direction was obstructed by an embankment which was just east of the road and south of the track so that from where he was stopped he could see the track for a distance of only about 350 to 375 feet. After stopping for four or five seconds he started up slowly. As he did he looked ahead along the road where he could see a distance of 1500 feet to the top of a hill, then he looked to the west again and lastly looked to the east and saw the train coming. At that time the front of his truck was past the north rail and the cab was about above it. The train was fifty to seventy-five feet to the east of him coming sixty miles an hour. He attempted to speed up but the right rear of his truck was struck by the locomotive. His brakes were in good condition and he had experienced no trouble in managing or stopping the truck. The two Jung boys testified for plaintiff. They had seen the smoke rising over the embankment while plaintiff was approaching the crossing and ran after plaintiff and yelled at him to warn him of the coming train. The smoke appeared to be about 150 feet east of the road. A photographer testified for defendants that with his camera placed at a point 20 feet south of the south rail he took a

picture showing an engine standing on the track at a point 1200 feet east of the crossing. Defendants' engineer testified that for a distance of over a quarter of a mile east of the crossing the track ran in a substantially straight line.

From the physical facts conclusively shown by photographs or described without contradiction, the conclusion is self-evident that as a person proceeded northwardly away from the obstruction of the embankment his view eastwardly along the track would lengthen from the limits of 350 to 375 feet at the point where plaintiff stopped to more than a quarter of a mile at the center of the crossing. The distance from the point where plaintiff first looked to the point he reached when he saw the train was at least twenty-four feet. He was moving very slowly and able to stop without difficulty before reaching the track.

Under these facts can we say that all reasonable minds would agree that plaintiff was contributorily negligent in not looking again to the east after passing the obstruction and before putting himself in the path of danger? Did plaintiff exercise the highest degree of care for his own safety as was his duty? Some time ago in the case of Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362, 30 S. W. 339, and under conditions where only ordinary care was required we announced the applicable rule as follows: "The duty of a traveler upon a highway, in approaching a railroad crossing, to use all reasonable precautions to ascertain the approach of trains and to avoid injury by them is well settled law, not only in this court, but perhaps of all the courts of this country. This rule imperatively requires him to look carefully, in both directions, at a convenient distance from the crossing, before venturing upon it, if, by looking, a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track which gives opportunity to see, it is the duty of the traveler to look. He cannot close his eyes and thereby relieve himself of the consequence of his own neglect. [Hayden v. Railroad, 124 Mo. 566.]"

In a more recent case we cited the above case in support of the same rule although differently expressed. We there stated the rule: "And if, when approaching a railroad track, the plaintiff is unable to see whether he can pass across in safety, he must exercise care commensurate with the circumstances, and should, if necessary, continue to look until he can see, even up to the crossing." [State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S. W. (2d) 915.] The general rule is thus stated in 52 C. J. 313: "It is the duty of a traveler approaching a railroad crossing where the view is obstructed to stop, look, and listen at a time and place where it will be reasonably effective to do so. The duty is a continuing one until the danger is past, and is not performed by attempting to look only from a

point at which the view is obstructed. Hence where one approaching a crossing looks and listens or stops, looks, and listens at a point where there are obstructions to the sight or hearing, if he subsequently reaches a point where an approaching train can be seen or heard, it is his duty to look and listen again, and his failure to do so is such negligence as will bar him from recovering for his injury.'' Our decision in Scott v. Kurn, 343 Mo. 1210, 126 S. W. (2d) 185, is apposite here because of the similarity of the facts. In that case the obstruction was a tank car standing on a switch track which limited a truck driver's view from where he looked to 200 feet along the track. The switch track was 9 feet from the closest rail of the main line track and the tank car was standing seventy-five feet from the highway. However, the main line track ran in a straight line beyond the tank car for more than 800 feet from the crossing. We found that if the driver had looked again he could have seen the train in full view before the front wheels of his truck reached the nearest rail of the track and held him guilty of contributory negligence as a matter of law because of his failure to keep a lookout for the train approaching from beyond the obstruction.

Applying the rules above announced to the case at bar the conclusion is inevitable that plaintiff is guilty of contributory negligence and therefore precluded from recovery. Had he looked again after clearing the embankment which obstructed his view, as the law says he must, he could have seen the train in full view and avoided the collision. [See also: Herring v. Franklin, 339 Mo. 571, 98 S. W. (2d) 619; Carner v. St. Louis-San Francisco Ry. Co., 338 Mo. 257, 89 S. W. (2d) 947; Hall v. St. Louis-San Francisco Ry. Co. (Mo.), 240 S. W. 175; Smith v. St. Louis Southwestern Ry. Co. (Mo. App.), 31 S. W. (2d) 105; State ex rel. Hines v. Bland (Mo.), 237 S. W. 1018; Monroe v. Chicago & Alton Ry. Co., 297 Mo. 633, 257 S. W. 469.]

In view of plaintiff's evidence and the undenied physical facts there can be no question here for a jury. Defendants' demurrer should have been sustained. [Fritzpatrick v. Kansas City Southern Ry. Co., 347 Mo. 57, 146 S. W. (2d) 560.]

The judgment is reversed. All concur.