State of Missouri at the Relation of Kansas City Public Service Company, a Corporation, Relator, v. Ewing C. Bland, Nick T. Cave and Samuel A. Dew, Judges of the Kansas City Court of Appeals.—No. 39206.—188 S. W. (2d) 650.

Court en Banc, June 4, 1945.

Rehearing Denied, July 2, 1945.

80

*Charles L. Carr, Watson, Ess, Groner, Barnett & Whittaker, Carl E. Enggas* and *Douglas Stripp* for relator.

*E. E. Thompson, Alfred H. Osborne, Thompson & Osborne* and *Lillie Knight* for respondents.

DALTON, C.—Original proceeding in certiorari to quash, for alleged conflicts, the opinion of respondents in the case of Pettyjohn v. Kansas City Public Service Company (Mo. App.), 181 S. W. (2d) 179.

The cause before respondents was an action for damages for personal injuries, which had been submitted to a jury upon both primary and humanitarian negligence. Verdict and judgment had been for plaintiff and defendant had appealed. On appeal, appellant contended that plaintiff was guilty of contributory negligence, as a matter of law, and that the trial court had erred (1) in submitting the cause on primary negligence and (2) in excluding from the evidence section 48(a) of the Kansas City Traffic Code. Respondents affirmed the judgment and relator contends that respondents' rulings, on the issues mentioned, conflict with prior controlling decisions of this court.

Respondents stated the facts (in so far as they affect the issue of primary negligence) about as follows: Plaintiff was injured June 26, 1941, when the truck he was operating eastwardly across a street car line on Wyoming Street in Kansas City, Missouri, was struck by defendant's northbound street car. Plaintiff had just unloaded some freight at the Rock Island motor freight depot dock on the west side of Wyoming Street and was proceeding away from the dock when the collision occurred. The dock with 12 doors, numbered from north to south, was located 35 feet and 4 inches west of and parallel to the street car line in Wyoming Street. Eight feet of this space (adjoining the dock) was outside of Wyoming Street, but all was paved with the same material and constituted one thoroughfare. The pavement east of the street car track was 13.85 feet in width. The

street cars operating on the track had an "overhang" of 18 inches on either side.

Plaintiff's truck, 23 feet in length, was parked headed east, 12 feet back from the nearest street car rail, with its rear at No. 2 door of the dock. Plaintiff sat 8 feet back from the front of his truck (15 feet from its rear). A solid sided trailer 18 feet in length stood 8 or 16 feet south of plaintiff's truck. A tractor with glass windows and windshield, stood in front of this trailer and extended out 3 or 4 feet further than plaintiff's truck and to within 8 or 9 feet of the street car track. There was a space 18 inches wide between the trailer and tractor.

"Plaintiff testified that, while he could not see to the south over the trailer, by looking through the 18 inch space, and through the glass in the tractor and over the tractor, he could see 200 to 250 feet to the south and could see a street car trolley over the top of the tractor for that distance. He further testified . . . that he looked south and saw no car approaching; that he then started up and, after driving between 4 and 5 feet, he looked to the north and, after looking to the north, he looked to the south again. By that time the front end of his truck 'was just starting over the west rail . . . I might have been 6 inches or a foot across the west rail.' At this time he, sitting in his truck, had arrived at a point immediately in front of the tractor. When he looked to the south the second time he saw the street car approaching about 65 to 75 feet away. The car was proceeding at a rate of speed of 15 or 20 miles per hour. He immediately attempted to place his truck in reverse and applied his brakes but he was unable to back up. He stopped his truck with its front wheels 'two, or it could be six inches' west of the east rail of the street car track.

"He testified that, from the time he started up until he attempted to stop, he was proceeding at a rate of speed of 2 to 2½ miles per hour; that he had stopped about a half a second before the collision. He testified that he was familiar with the fact that there was always heavy traffic at this point at this time of day (about 6:30 P. M.).

"A number of witnesses for plaintiff testified that the approaching street car gave no warning signal and that the car did not decrease its speed as it approached the point of the collision . . .

"The evidence shows that there was a slow sign suspended from the trolley wires slightly north of number 2 door. Plaintiff's witness, Brumfield, testified that the operators of street cars are instructed, when driving in the vicinity of such a sign 'to keep your car under control so you can stop without getting into any trouble. Q. And the speed, does that have reference to? A. The normal speed with reference to that was usually five or six miles per hour, a slow sign, a dangerous point.' . . ."

There was evidence that the street car, traveling at 20 miles per hour, could have been stopped in 50 to 55 feet. Defendant's evidence showed that the street car was traveling at a speed of 18 miles per hour; that it was actually stopped in 57 to 60 feet; and that 60 to 65 feet would have been a good stop after the emergency arose.

Respondents ruled the issue presented as follows: ''There is nothing contrary to physical laws in plaintiff's testimony that he could see through the windows of the tractor in such a manner as to discern an approaching object as large as a street car, or a trolley attached to the top thereof. Assuming that he was mistaken in saying that, when he first looked south he could see as much as 200 feet away, when, as a matter of fact, he could only see 160 feet, which defendant admits there was evidence sufficient to show, we do not think that plaintiff should be convicted of contributory negligence, as a matter of law, in not looking again until his truck had proceeded to the place where it was impossible to avert a collision were a street car approaching. Of course, it is the general rule that one approaching a railroad or street car track, who is unable to see whether he can pass over the crossing in safety, must continue to look until he can see even up to the crossing. (Rischeck v. Lowden et al., 347 Mo. 426, 147 S. W. (2d) 650, 652, and cases cited therein.) Yet, this rule, in common with most rules, has its exceptions. The exception is that 'ordinary care does not require the traveler to constantly look and listen at all points of his approach to a railway crossing and while upon the track. If he looks and sees no car approaching, he should not be held guilty of negligence, as a matter of law, in attempting to cross, if, *in view of the distance for which the track appears to be clear, he would have time to cross before a train or car going at the usual and lawful rate of speed would* reach the crossing.' (Italics by respondents.) . . . Maloney v. United Railways Co. of St. Louis, 183 Mo. App. 292, 297, 298, 167 S. W. 471, 472. . . .

''However, defendant says that the 'car was not more than 160 to 196 feet away when plaintiff looked and it was necessarily within his vision' and plaintiff was guilty of negligence, as a matter of law, in his failure to see it. This contention is not consistent with defendant's contention, supra, that plaintiff could not see more than 120 to 160 feet away at that time. We have accepted, supra, defendant's contention, that plaintiff could not have seen more than 160 feet at this time. There is no conclusive evidence that plaintiff could have seen the car at the time in question.

''The undisputed evidence shows that there was heavy traffic in front of the dock along which the street car was approaching; that this unusual condition of traffic was such that defendant had placed a slow sign at that point, which meant that the point was dangerous and that the speed of the street cars should be slowed down to 5 or

6 miles per hour. It may be assumed that this regulation was ordinarily obeyed. Both plaintiff and the operator of the street car knew of the condition of congestion of traffic at this point. We think reasonable minds may differ as to whether plaintiff when he failed to look until the second time, even though too late, could have relied upon an operator of a possible approaching car proceeding at a slower rate of speed than 15 or 20 miles per hour, under the circumstances.

"It is true, when plaintiff started up it was necessary for him to proceed approximately 42 feet before the rear end of his truck cleared the overhang of the street car to the east; that it would take at least 11 seconds for him to clear the track; that the street car going at the rate of 20 miles per hour would travel approximately 330 feet and, at 15 miles per hour, it would travel approximately 250 feet, all as defendant contends and, if plaintiff is to be held to the assumption that the street car would be approaching at the rate of 15 or 20 miles per hour, he knew that a collision would be inevitable; yet, we do not think, under the circumstances, that a jury could not find otherwise, and we are of the opinion that plaintiff should not be held, as a matter of law, to the duty of anticipating that a street car might likely or reasonably be approaching at a rate of speed of 15 or 20 miles per hour."

██ Relator contends that, upon the facts stated by respondents, the plaintiff was guilty of contributory negligence as a matter of law, "in that his view of the track to the south was substantially obstructed and he drove onto the track without ever using the required highest degree of care to look from a point where it was effective to do so"; that respondents have held "that a *motorist* is excused, by the exercise of merely ordinary care, from that high degree of duty imposed by the common law upon all travelers approaching rail crossings, and from the highest degree of care which is imposed on motorists by statute"; and that the respondents have further held "there is an exception to the rule respecting a motorist's duty at an obstructed view crossing, viz., that ordinary care does not require him to constantly look and listen as he approaches a crossing and (that) he should not be held negligent, as a matter of law, in attempting to cross, if the track appears to be clear for such a distance that he would have time to cross before a car going at the usual and lawful rate of speed would reach him." Relator insists that respondents' opinion conflicts with prior controlling decisions of this court in Scott v. Kurn, 343 Mo. 1210, 126 S. W. (2d) 185, 187; Rischeck v. Lowden, 347 Mo. 426, 147 S. W. (2d) 650, 652; and Danzo v. Humfeld (Mo. Sup.), 180 S. W. (2d) 722.

The "obstructed-view crossing rule" relied upon by relator was applied in Scott v. Kurn, supra. The court said: "The applicable rule is thus stated in 52 C. J. 325, sec. 1901: 'The presence of standing cars at a crossing is a notice of danger, calling on the traveler to

exercise the greater care which ordinary caution requires; and where the view of one about to enter upon a railroad crossing is obstructed by standing cars, if he attempts to cross without exercising proper care to look and listen for the purpose of discovering an approaching train as soon as it can be seen, as immediately after reaching the end of, or passing, the standing cars which obstruct his view, and if, where necessary to do so, he fails to stop to look and listen for the purpose, he is chargeable with contributory negligence precluding recovery, notwithstanding negligence on the part of the railroad company in failing to sound the proper warning signals.' See, also, . . . Monroe v. Chicago & A. R. Co., 297 Mo. 633, 249 S. W. 644, loc. cit. 650 (8), 257 S. W. 469. In the latter case this court said: 'This is not a rule of evidence, but a rule of law, "peremptory, absolute and unbending," that may not be ignored or evaded by court or jury. It is inflexible and admits of no exceptions.' ''

Substantially the same rule was applied in the case of Rischeck v. Lowden, supra. Also, see, Danzo v. Humfeld, supra.

Relator contends that this court expressly held that there are "no exceptions," and that, therefore, respondents' opinion conflicts with the decisions of this court. Relator further insists that respondents have applied an erroneous rule to a state of facts similar to the facts in the cases cited, wherein this court held the plaintiffs guilty of contributory negligence as a matter of law; that respondents have held that plaintiff (Pettyjohn) was not negligent, as a matter of law, because he could assume from 160 feet of clear track that he had time to cross in safety, while the record shows no facts to support such an assumption; and that, since this court applied a different rule of law to facts similar to the facts stated in respondents' opinion, the opinion of respondents conflicts with the prior controlling decisions of this court in Smith v. Wells, 326 Mo. 525, 31 S. W. (2d) 1014, and Hill v. St. Louis Public Service Co. (Mo. Sup.), 64 S. W. (2d) 633, 636.

Respondents recognized the rule applied by this court in the case of Rischeck v. Lowden, supra, but held it to be inapplicable to the facts before them. They applied a different rule and called it an "exception" to the rule stated in Rischeck v. Lowden, supra. Respondents in this court contend that plaintiff *could rely* on defendant not operating a street car at several times its usual speed; that he *could assume* that he had sufficient time to cross, when he started with 160 feet of clear track; and that whether or not he failed to exercise the highest degree of care was a question for the jury. Respondents further say that it was in effect held in the instant case that "plaintiff's vision was not obstructed and that he did look and ascertain that a street car was not approaching within such distance as to endanger his passage over defendant's track, *on the premise the car would be operated at the usual and customary rate of speed at that*

*point."* (Italics ours.) Respondents "do not question the rule of law announced in the cases cited by relator," but claim they "distinctly put their ruling upon the ground that the facts in the instant case were essentially different from such authorities."

The rule stated and applied by respondents is well established by the decisions of this court. Jordan v. St. Joseph Ry., Light, Heat & Power Co. (Mo. Sup.), 38 S. W. (2d) 1042, 1043; Highfill v. Wells (Mo. Sup.), 16 S. W. (2d) 100, 102; Shumate v. Wells, 320 Mo. 536, 9 S. W. (2d) 632, 634; Strauchon v. Met. St. Ry. Co., 232 Mo. 587, 599, 135 S. W. 14, 18; Monroe v. C. & A. Ry. Co., 280 Mo. 483, 495, 219 S. W. 68, 71 (where a jury could find that plaintiff, before attempting to cross, "saw no approaching train and saw enough of the track to make it clear beyond doubt that a train running at anything like ordinance speed could not reach the crossing before he had passed safely over it"); Pitcher v. Schoch, 345 Mo. 1184, 1191, 139 S. W. (2d) 463, 466; Sugarwater v. Fleming, 316 Mo. 742, 239 S. W. 111. The rule stated in said decisions does not conflict with the rule stated in the cases relied upon by relator. While this court has not referred to the rule applied by respondents as an "exception" to the rule relied on by relator, the facts required for the application of the rule applied by respondents are equivalent to a compliance with the rule relied on by relator. The rules are applicable to different states of fact. Respondents' mere designation of the rule applied by them as "an exception" to the rule contended for by relator is insufficient to constitute a conflict with the decisions of this court. The statement was unnecessary to the determination of the issues decided and was not the basis for the decision. It was not such a decision or holding as to be subject to being quashed on certiorari for conflict with the cases cited. State ex rel. United Transports, Inc. v. Blair, 352 Mo. 1091, 180 S. W. (2d) 737, 739.

Nor does it appear from the opinion that respondents ruled the issue before them on the basis that plaintiff was only required to exercise ordinary care for his own safety rather than the highest degree of care required by Sec. 8383, R. S. 1939 and Scott v. Kurn, supra. While some of the cases cited and quoted from by respondents were ruled on the basis of ordinary care, it does not appear that the cause was ruled upon a theory other than that plaintiff was required to exercise the highest degree of care, as submitted in defendant's Instruction G, which was considered by respondents (181 S. W. (2d) 179, 186). We find no conflict on this issue.

Did respondents apply to the facts before them a different rule of law from that which has been applied by this court to similar facts? Does respondents' holding (that plaintiff was not guilty of contributory negligence as a matter of law) conflict with the controlling decisions of this court relied upon by relator? We think the question presented turns upon whether, under the facts stated by re-

spondents, the plaintiff in the exercise of the highest degree of care had the right to rely upon defendant's compliance with a custom and practice (usual rate of speed of defendant's street cars) of which he (plaintiff) knew nothing. The Jordan, Shumate, Strauchon, Monroe and Pitcher cases, supra, hold that a plaintiff, in the absence of knowledge to the contrary, has the right to rely upon a defendant complying with a statute or ordinance and operating at a lawful rate of speed. The Highfill and Sugarwater cases involved a failure to operate at a usual and ordinary speed, which was known to and relied upon by plaintiff. In all of these cases plaintiff's contributory negligence was for the jury.

While respondents reviewed the evidence concerning the existence of heavy traffic in front of the dock, the presence of the "slow" sign and defendant's directions to its operators concerning speed, respondents stated no facts from which an inference could be drawn that plaintiff knew of the sign, the directions to defendant's employees or of the custom and usual practice of defendant to operate its street cars at 5 or 6 miles per hour when approaching the dock area, nor is it stated that plaintiff did rely on any of these facts at the time he drove his truck upon defendant's track. Respondents stated no facts, known to plaintiff, upon which he could have relied in assuming, if he did, that "a possible approaching car" would be "proceeding at a slower rate of speed than 15 or 20 miles per hour." In the absence of such facts, respondents, nevertheless, hold that reasonable minds may differ on whether plaintiff could have *relied* upon " a slower rate of speed."

On the facts stated by respondents, a street car traveling at the rate of 10 miles per hour, or 14.66 feet per second, could traverse the 160 feet of clear track before plaintiff could clear the crossing in the 11 seconds required. There is no evidence and no suggestion that plaintiff knew of or relied on the ability of defendant's agents in the exercise of ordinary care to see his truck and to stop or slow down the street car after plaintiff's truck was upon the track and before the street car would reach plaintiff's truck, that is, if the street car was approaching at a higher rate of speed than 10 miles per hour. According to the evidence, plaintiff's truck would not have been apparent to the operator of an approaching street car, until after plaintiff's truck appeared beyond the tractor and trailer, and then an approaching street car (which was not visible to plaintiff when he started) might be much less than 160 feet away. In the case at hand, the street car, according to respondents, was from 129 to 156 feet away when plaintiff's truck first emerged from behind the tractor.

The facts stated by respondents were insufficient to warrant the application of the rule of law applied by them. Knowledge of and reliance on the alleged customary or usual speed were both essential to excuse plaintiff's conduct under the facts stated in respondents'

opinion, or to make an issue for the jury concerning whether plaintiff exercised the highest degree of care under the circumstances. No evidence of plaintiff's knowledge of or reliance thereon appears from respondents' statement of facts. Plaintiff, therefore, merely took a chance that no street car was immediately approaching beyond his view at a speed in excess of 10 miles per hour, or that, if one was approaching and at a speed in excess of 10 miles per hour, the operator would see plaintiff in time and be able to stop and avoid a collision. Plaintiff was driving slowly and, if he had looked when he cleared the obstruction, he could have seen the approaching street car in time to have stopped before going upon the track. Under similar circumstances, this court has ruled that a plaintiff was guilty of contributory negligence as a matter of law and the rule contended for by relator was applied. Smith v. Wells, supra; Hill v. St. Louis Public Service Co., supra; Scott v. Kurn, supra; Rischeck v. Lowden, supra. To review the detailed facts in each of these cases would unduly extend this opinion. It is sufficient to say that the facts in these cases are sufficiently similar to the facts stated by respondents to require the application of the rule of law contended for by relator and a holding that plaintiff (Pettyjohn) was guilty of contributory negligence as a matter of law. Respondents' holding that the issue of contributory negligence was for the jury conflicts with said decisions.

Relator contends that respondents' holding (that Sec. 48(a) of the Kansas City Traffic Code was properly excluded from evidence in the trial court) conflicts with the prior controlling decision of this court in the case of Bush v. Kansas City Public Service Company, 350 Mo. 876, 169 S. W. (2d) 331.

In addition to the facts heretofore stated, respondents further stated the facts and ruled, as follows: "It is insisted that the court erred in excluding 48(a) . . . of the City Traffic Code. Section 48(a) provides, as follows: 'The driver of a vehicle entering a street from a private road or drive shall yield the right of way to all vehicles approaching on such street.'"

"This provision of the code is inapplicable here, for the reason, that plaintiff was not entering a street from a private road or drive. His truck, when he started up, was already upon a public street, at least, ▮▮▮▮ so far as the front 15 feet of it was concerned."

In Bush v. Kansas City Public Service Company, supra, relied upon by relator, the defendant's bus was standing still at the end of the line on private property where it regularly turned around. The front of the bus was at the street line and the operator had been waiting for his time to begin a run. As plaintiff approached along the street in his automobile, defendant's operator drove the bus out into the street and into the pathway of plaintiff's automobile so that a collision occurred. The court said: "Since the bus was at the street line and the operator intended to drive it upon a public street, we rule that

he was bound to exercise the highest degree of care to discover traffic upon the street and that such care is required by the statute." Sec. 8383, R. S. 1939.

Relator argues the point as follows: "The nature and purpose of the sections of statute and of ordinance in question are so much alike that respondent's ruling is clearly in conflict with this court's decision. If a motorist is operating on the highway, under the statute, when he is entirely on private property but intends to drive upon the highway, as this court held, then certainly a motorist is entering a street from a private drive under the ordinance when he has backed into a private drive with a substantial portion of the rear part of his truck, has attended to his business, and is again driving back into the street and into traffic moving thereon. Even in a strictly technical sense a vehicle is entering at all times until it has entered, and it has not entered until all of it is in the street. Both cases involve a regulation for the protection of traffic on the highway. The danger to traffic from the starting up of a vehicle which is partly on and partly off the street is certainly as great as the danger to traffic on the highway from vehicles standing entirely off the highway but intending to move thereon."

It is apparent that relator has misconstrued the holding in the Bush case, supra, which case held that Section 8383, R. S. 1939 applies to a motor vehicle entering upon a public highway, but we find no conflict between the holding in that case and respondents' holding that section 48(a) of the Kansas City Traffic Code was inadmissible in evidence because the truck in question was already upon the public street and was not entering from a private road or drive.

For the reasons heretofore stated, that part of respondents' opinion holding that the issue of plaintiff's contributory negligence was for the jury and the record made pursuant thereto should be quashed. It is so ordered.

PER CURIAM:—The foregoing opinion of DALTON, C., is adopted as the opinion of the Court en Banc; *Hyde, Gantt, Leedy* and *Tipton, JJ.,* concur; *Ellison, J.,* dissents in separate opinion in which *Douglas, J.,* and *Clark, C. J.,* concur.

ELLISON, J. (dissenting)—■ The grounds of my dissent are as follows. Concededly, if the injured party fails to look or listen at a railroad crossing when by doing so the danger would be clearly apparent, his failure constitutes contributory negligence as a matter of law. State ex rel. K. C. So. Ry. Co. v. Shain, 340 Mo. 1195, 1201(3), 105 S. W. (2d) 915, 918(6). Under this decision the same is true when he cannot see or hear the train at all and yet proceeds across the track without exercising care commensurate with the circumstances. See also Borrson v. M.-K.-T. Rd. Co., 351 Mo. 229, 248(6), 172 S. W. (2d) 835, 847(11).

But in the instant case the view was only partly obstructed. The plaintiff could not see *over* the tractor-trailer parked south of his own truck, but he had looked just before he mounted his truck and after he got on it he could see to the south through the windows of the trailer and through the 18 inch space between it and the trailer coupled to it. He testified he did look through or between these and could not see any streetcar approaching for a distance of 200 to 250 feet. He started up, moved 4 or 5 feet, looked to the north but saw no streetcar there, and then when the front end of his truck had gone 7 or 8 feet further east and was just starting over the near rail of the streetcar track, and his view from his cab had cleared the trailer-tractor, he looked again to the south and saw the streetcar approaching 65 to 75 feet away at a speed of 15 to 20 miles per hour.

There was a "Slow" sign hanging on the trolley suspension wires almost opposite the place where the plaintiff's truck had been parked at the loading dock, and traffic was congested there. Company instructions required motormen to reduce speed to about 5 or 6 miles per hour at such places. The principal opinion says respondents' opinion does not state any facts from which an inference could be drawn that plaintiff knew of the sign or the slow orders. But the sign was hanging nearly in front of his truck, and respondents' opinion does say both plaintiff and the motorman knew of the traffic congestion, 181 S. W. (2d) l. c. 184(5). This was enough to warrant an inference that the plaintiff rightfully expected the streetcar to approach at a reduced speed. Our manslaughter cases for driving recklessly into a crowd on the public highway forbid any assertion to the contrary. State v. Studebaker, 334 Mo. 471, 66 S. W. (2d) 877; State v. Melton, 326 Mo. 962, 33 S. W. (2d) 894.

In my opinion these facts are not the same or similar to those in the cases cited in the principal opinion as announcing a general rule admitting of no exception. They come nearer being in line with those in State ex rel. Q., O. & K. C. Rd. Co. v. Trimble (Div. 1), 254 S. W. 846, 849-50(2); State ex rel. Maclay v. Cox, 320 Mo. 1218, 1226-8, 10 S. W. (2d) 940, 943(2). Under these decisions it seems to me the plaintiff's contributory negligence was a question for the jury. *Douglas, J.,* and *Clark, C. J.,* concur.