**REIMERS**

v.

**FRANK B. CONNET LUMBER CO.**

No. 43410.

Supreme Court of Missouri.

Division No. 1.

July 12, 1954.

Rehearing Denied and Opinion Modified
on Court's Own Motion
Sept. 13, 1954.

———◆———

Clay C. Rogers, Lyman Field, James W. Benjamin, Jack B. Robertson, Rogers, Field & Gentry, Dubiner & Gregg, Kansas City, for appellant.

Henry W. Buck, W. H. Hoffstot, Jr., John R. Gibson, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, for respondent.

COIL, Commissioner.

Plaintiff-appellant's verdict and judgment for $35,000 for alleged personal injuries were set aside and a new trial granted defendant-respondent on the ground that the trial court erred in giving instruction 1 on behalf of plaintiff. On plaintiff's appeal, defendant contends that the trial court correctly ordered a new trial for error in giving instruction 1 and that plaintiff failed to make a case for the jury for the sole reason that "plaintiff's evidence as to how the accident occurred is so contrary to physical facts and is so completely impossible as to rob such testimony of probative value."

■ In determining whether plaintiff made a submissible case, evidence favorable to defendant is disregarded, and only the evidence favorable to plaintiff, and the reasonable inferences therefrom, will be considered. Of course, plaintiff is entitled to the benefit of any of defendant's evidence favorable to plaintiff and not contrary to his fundamental theory. See v. Wabash R. Co., 362 Mo. 489, 492, 242 S.W.2d 15, 16[3].

So viewing the evidence, the instant jury reasonably could have found: that in August 1949, as plaintiff was driving his automobile east on Chelsea Trafficway in Kansas City, Kansas, defendant's truck, loaded with lumber and being then operated by its employee, backed south from defendant's private driveway on the north side of Chelsea, across the street, and that lumber protruding beyond the rear of the truck bed struck the left side of plaintiff's automobile and then struck plaintiff; (Chelsea, 51 feet wide with east and westbound streetcar tracks near the center, runs northwest-southeast, but for purposes of this case we shall assume that Chelsea is an east-west street); that when plaintiff turned onto Chelsea some distance west of the collision point and after he had rounded a curve, and when about three fourths of a block west of defendant's lumberyard, he began to pass to the right of an eastbound streetcar; that plaintiff reached a point where the front of his automobile was about even with the side or center door of the streetcar, traveled in this position at 12 or 15 m.p.h. for a time, and, when he saw two persons waiting at a streetcar stop to the east, decided not to pass; that he lessened the pressure on the accelerator at the same time the streetcar "picked up speed", and plaintiff's automobile thus fell behind the streetcar but remained in the portion of the street south of the south rail of the eastbound track; that plaintiff's automobile was (after it had dropped back) traveling between 10 and 15 m.p.h. and was about 15 feet to the rear of the streetcar at collision time; that plaintiff saw the truck or the protruding lumber only an instant before the collision; that from the south street curb to the south rail of the eastbound track was 14 feet 6 inches; that the distance between the rails of each of the eastbound and westbound tracks was 4 feet 8 inches, and the distance between the two tracks (i.e., the south rail of the westbound track and the north rail of the eastbound track) was 5 feet; that plaintiff's automobile was 4½ to 5 feet wide. Plaintiff at one time estimated that at the time of the collision, the left side of his automobile was about 7½ or 8 feet south of

the south rail of the eastbound track. At another time plaintiff said that after the collision his automobile was 4 or 5 feet from the south curb of Chelsea. There was evidence from which the jury reasonably could infer that the automobile was pushed some to the south by the collision.

Defendant's argument to support its contention (that plaintiff's testimony as to how the accident happened is so contrary to physical facts and so completely impossible as to rob it of probative value) is based upon mathematical computations by which defendant seeks to demonstrate that, by taking plaintiff's testimony and defendant's evidence as to speeds and distances and relative positions of the two vehicles and the streetcar, the casualty could not have occurred. The decisive fallacy in defendant's argument is that it assumes that plaintiff was bound by defendant's uncontroverted evidence.

Plaintiff offered no evidence as to the position or speed of defendant's truck, other than that it was in the act of backing across Chelsea just prior to the collision. Defendant's evidence was that its truck had been theretofore backed from its private drive across Chelsea to a place where it was in the path of the eastbound streetcar; that to allow the streetcar to pass it had been pulled forward so that its front was again in the private drive and the end of the protruding lumber was just north of the south rail of the westbound track; and that after the streetcar passed, the truck then started to back at 3 or 4 m.p.h.

Defendant's "no submissible case formula" is based upon the premise that the truck had to move a certain number of feet at a certain speed while the plaintiff proceeded not more than 15 feet at a certain speed. From these hypotheses defendant concludes that the collision could not have occurred. But plaintiff was not bound by defendant's testimony as to where the truck was when it began to back or at what speed it backed. No essential element of plaintiff's case depended upon defendant's evidence (except the fact that the truck was backed from defendant's private drive) as to the exact starting position or speed of defendant's truck. The jury could believe or not believe all or any part of defendant's evidence. Thus, defendant's calculations, while forming the basis for a jury argument do not affect the question of submissibility. The facts of the collision and that the protruding lumber and the left side of plaintiff's automobile came into collision were not disputed. The only fact which may be said to relate to "physical law" or "impossibility" which the jury needed to find was that defendant's truck backed at such a speed that it missed the streetcar and struck the left side of plaintiff's automobile in a space between the automobile and streetcar of only 15 feet. In other words, unless it is contrary to physical fact or law to say that a jury reasonably could find that the truck backed at such a speed that it missed the streetcar 15 feet ahead of plaintiff's automobile and yet struck the automobile, there is no merit in defendant's contention. We think it apparent that there is nothing unreasonable, impossible, or opposed to physical laws or fact inherent in such a finding. Certainly, for example, if the left front door post of plaintiff's automobile and the farthest protruding lumber on defendant's truck were each 15 feet from the collision point and each vehicle proceeded to the collision point at 10 m.p.h., the collision would necessarily occur; and obviously the streetcar, 15 feet ahead of the automobile, would not be struck by the protruding lumber.

Furthermore, even by employing mathematical calculations (upon the assumption that plaintiff in his brief adopted the defendant's testimony that the speed of the backing truck was 5 m.p.h.), plaintiff made a submissible case. Defendant's calculations are based on the assumption that the left side of plaintiff's car was 7½ or 8 feet south of the south rail of the eastbound track. However, as pointed out, plaintiff, while so estimating at one place in his testimony, also testified that when his car came to rest following the accident it was about 5 feet from the south curb. We have also

noted that the jury reasonably could find that plaintiff's automobile was pushed to the south by the collision. Thus considering the evidence from a standpoint most favorable to plaintiff, the jury could have found that the distance between the south curb and the south rail of the eastbound track was 14 feet 6 inches; that plaintiff's automobile was 5 feet wide; and that after the accident its right side was at least 5 feet from the south curb. Consequently, the jury reasonably could find that the left side of plaintiff's automobile at the time of the collision was about 4½ feet south of the south rail of the eastbound track. If the protruding lumber on defendant's truck (not stopped but moving backward at the time the streetcar passed) just cleared the rear end of the streetcar, the truck backed at 5 m.p.h. a distance of about 10 feet 10 inches in approximately 1.4 seconds. Plaintiff estimated that his automobile was about 15 feet behind the streetcar at collision time. Thus plaintiff's automobile at 10 m.p.h. would have moved about 20½ feet in the 1.4 seconds. But plaintiff's statement as to the distance between the front of his car and the streetcar at the time of the collision was an estimate. Under the circumstances, we should not say as a matter of law that plaintiff failed to make a submissible case when the difference between his estimate as to the distance between the rear of the streetcar and the front of his automobile at collision time and the necessary distance by mathematical calculation was only about 5 feet. This is certainly true when it is recognized that the jury reasonably could find from all the evidence that plaintiff's estimate of the distance between the front end of his automobile and the rear of the streetcar was made the instant before impact, and that thereafter and before impact the front end of plaintiff's automobile would have traveled about five additional feet, i.e., the distance between the front end of the automobile and the point of impact on the left front door post. See: Barnes v. Vandergrift, Mo., 269 S.W.2d 13.

Defendant has cited 24 cases on the well-established proposition that when essential evidence conflicts with physical facts or is inherently impossible, it has no probative value. Defendant's cases principally relied on, S.C. Rule 1.08(a) (3), 42 V.A.M.S., are Rosemann v. United Rys. Co. of St. Louis, Mo.App., 251 S.W. 104; Bauer v. Wood, 236 Mo.App. 266, 154 S.W.2d 356, and Gwaltney v. Kansas City Southern R. Co., 339 Mo. 249, 96 S.W.2d 357. From what we have said, it is apparent that the rule of these cases is not applicable to the instant case.

Plaintiff's instruction 1 was: "The court instructs the jury that under the laws of the State of Kansas; (1) the driver of a motor vehicle about to enter or cross a public street or highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said public street or highway; (2) and also the driver of a motor vehicle must at all times exercise ordinary and reasonable care in the operation of a motor vehicle upon the public streets and highways to avoid injury to the person of others.

"You are, therefore, instructed that if you find and believe from the evidence, that as plaintiff Reimers was approaching and coming up to and at the place of the collision and occurrences mentioned in evidence, he was, at all times, in the exercise of reasonable and ordinary care for his own safety, if so, and was driving his automobile on his right half of the street, if so, and if you find that the defendant's driver operated and backed defendant's truck from defendant's private driveway, if so, and across the public street and negligently and carelessly, if so, failed to yield the right-of-way to plaintiff Reimer's automobile being so driven on the public street, if it was; and further, if you should find and believe from the evidence that the defendant's driver saw, or by the exercise of reasonable and ordinary care, could or should have seen the plaintiff's automobile approaching on the public street, and that danger of collision was reasonably certain, if so, unless the Connet Lumber truck was stopped and the right-of-way yielded to plaintiff Reimers, if you find from the evidence that defendant's

truck could, by the exercise of reasonable and ordinary care, thereafter, have stopped the truck, and could have, by reasonable and ordinary care, yielded the right-of-way to Reimers, and if you find from the evidence that defendant's truck driver negligently and carelessly, if so, failed to yield the right-of-way, and negligently and carelessly, if so, failed to stop the truck and avoid collision, if so, and that as a direct result of such negligence, if you so find, the lumber on defendant's truck collided with plaintiff's automobile and plaintiff was directly injured thereby, if you so find, your verdict should be for the plaintiff and against the defendant, Connet Lumber Company."

The trial court granted a new trial for the reason "that said instruction required no finding of fact as a basis for the violation of the right-of-way rule and permitted the jury to establish a rule of right-of-way and pass upon the violation of the rule." Defendant contends that the instruction was erroneous for the reason stated by the trial court and for the further reasons that the Kansas right-of-way statute had no application to the facts of this case, and that the instruction failed to submit sufficient facts to guide the jury in determining liability. We shall assume, as defendant contends, that instruction 1, taken as a whole, did submit only a violation of the Kansas right-of-way statute.

Section 8–553, General Statutes of Kansas, 1949, provides: "The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on said highway."

▮▮▮ Defendant's argument that the statute does not apply is again based upon the premise that plaintiff was bound by defendant's evidence to the effect that the truck had first backed partially out of the private drive, had then pulled forward to allow the streetcar to pass, and then had backed into the street. Defendant's theory is that the truck had pre-empted the right of way prior to plaintiff's "approach" and that

therefore the statute did not apply. But, as we have pointed out in connection with the question of submissibility, plaintiff was not bound by defendant's evidence. Consequently, the jury reasonably could find that the truck backed continuously from the private drive into collision with plaintiff's car; that it had not theretofore become stationary in the street; and that it had not pulled forward to allow the streetcar to pass.

But if plaintiff at the trial and here has adopted the defendant's version as to the manner in which the truck maneuvered prior to the collision, i. e., that the truck backed from the driveway, then pulled partially back into the driveway to allow a streetcar to pass, and then again backed, from its position partly in the street and partly in the driveway, across the street and into plaintiff's automobile, we are of the opinion that the Kansas right-of-way statute was nevertheless applicable. We think the maneuvering of the truck constituted one continuous operation by which defendant's truck backed onto a highway from a private driveway within the meaning of the Kansas statute.

Defendant, to support its contention that the Kansas statute was not applicable under the facts of this case, has cited Pettyjohn v. Kansas City Public Service Co., Mo.App., 181 S.W.2d 179. In that case, plaintiff, a truck driver, was injured when his truck collided with a streetcar. Prior to collision the truck's rear was stationary against a freight loading dock (on the west side of, and contiguous to, a north-south street) with the truck's front 15 feet extending east into the street. A provision of the Kansas City Traffic Code, worded like the instant Kansas statute, was excluded from evidence by the trial court. The Court of Appeals said in this connection, 181 S.W.2d 186: "It is insisted that the court erred in excluding sections 48(a) and 49(a) of the City Traffic Code. Section 48 (a) provides, as follows: 'The driver of a vehicle entering a street from a private road or drive shall yield the right of way to all vehicles approaching on such street'.

"This provision of the code is inapplicable here, for the reason, that plaintiff was not entering a street from a private road or drive. His truck, when he started up, was already upon a public street, at least, so far as the front 15 feet of it was concerned." This court held that such ruling by the Court of Appeals did not conflict with any prior decision of this court. State ex rel. Kansas City Public Service Co. v. Bland, 354 Mo. 79, 188 S.W.2d 650, 655[3].

We think the facts in the Pettyjohn case, supra, are clearly distinguishable from the facts of the instant case. In Pettyjohn the truck was being loaded or unloaded as it stood partly on private property and partly on the street; the truck never was wholly on or within a private drive or road from which it entered a street. In brief, the truck simply did not enter a street from a private drive. In the present case, however, defendant's truck, before it backed, was completely off the street and wholly within a private drive, and, thus, did enter the street from a private drive. The manner in which the truck was maneuvered was all an integral part of the single act of entering a street from a private drive.

We, therefore, hold that the Kansas right-of-way statute was applicable to the facts of the instant case.

Defendant's contention that the instruction was erroneous because it failed to submit sufficient facts is based primarily upon the proposition that under the law of Kansas, Section 8–553, supra, must be read with and construed in the light of Section 8–552, which deals with a vehicle entering a through highway or stop intersection. In this respect defendant relies upon Adams v. Dennis, 171 Kan. 32, 229 P.2d 740, 742. The Adams case does hold that the two sections must be read together. But under the Adams case, the sections are to be read together only in so far as necessary to find a definition or standard by which meaning can be given to the expression in § 8–553: "all vehicles approaching on said highway". In other words, the court held in that case that the "approach" standard set forth in

Section 8–552 (i.e., vehicles "approaching so closely on said through highway as to constitute an immediate hazard") was the standard to be applied in construing the meaning of "approaching" in Section 8–553. Thus, as we understand the law of Kansas, § 8–553 means that the driver of a vehicle about to enter or cross a highway from the private road or driveway shall yield the right of way to all vehicles approaching so closely on said highway as to constitute an immediate hazard. Under the law of Kansas, violation of a right-of-way statute is negligence. Hurla v. Capper Publications, 149 Kan. 369, 373, 374, 87 P.2d 552, 555 [1, 2], 556.

Now, of course, the manner in which that substantive law is submitted (the form of an instruction) is a procedural matter, to be determined by the law of the forum. A.L.I., Conflict of Laws, § 585, p. 702; Menard v. Goltra, 328 Mo. 368, 380, 40 S.W.2d 1053, 1058[9]; Connole v. East St. Louis & Suburban R. Co., 340 Mo. 690, 698 [1], 102 S.W.2d 581, 585[1]. Consequently the question in the first instance is whether instruction 1 did submit, in accordance with Missouri procedural law, all the essential elements necessary for the jury to find that defendant violated § 8–553, supra. We think it apparent that the instruction did so. True, in the forepart of the instruction, the language of § 8–553 is set forth without reference to § 8–552 or without any other language containing the meaning of "vehicles approaching." However, the instruction later required that before the jury could return a verdict for plaintiff it had to find that "the defendant's driver saw, or by the exercise of reasonable and ordinary care, could or should have seen the plaintiff's automobile approaching on the public street, and that danger of collision was reasonably certain". It appears to us that an affirmative finding that plaintiff's automobile was approaching so "that danger of collision was reasonably certain" is at least equivalent to the requirement of the Kansas statute that plaintiff's automobile was "approaching so closely * * * as to constitute an immediate hazard". The instruc-

tion, therefore, did not, as the trial court suggested, permit the jury to establish its own "rule of right of way". On the contrary, it properly submitted the Kansas "rule of right of way" as that statute has been construed by the Supreme Court of Kansas.

But defendant contends that, even so, the instruction does not hypothesize sufficient facts. Seven omitted evidentiary facts are suggested as necessary to make the instruction a proper one. We need not set forth these suggested facts. Suffice to say that under the circumstances, the suggested facts were not essential to support a verdict for plaintiff. In Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 978, we said that facts essential or necessary to support a finding of negligence are not the same in all cases, and that "there could be no stereotyped instruction which would correctly submit any issue of specific negligence in the circumstances of all cases." In Hooper v. Conrad, Mo. Sup., 260 S.W.2d 496, 500, the court en banc quoted with approval the language of Knight v. Richey, and reaffirmed the proposition that facts necessary to be hypothesized in a given case are those "essential in law to support the verdict."

Tested by the Knight and Hooper cases, we are of the opinion that instant instruction 1 did hypothesize the essential facts necessary to a verdict for plaintiff. We have noted heretofore that there was no dispute that protruding lumber on defendant's truck came in contact with the left side of plaintiff's automobile as it moved eastwardly on, and as defendant's truck backed southwardly across, Chelsea. The instruction required the jury to find that defendant's truck was backed from defendant's private drive, that defendant's driver saw or could have seen that the danger of collision was reasonably certain, that in the exercise of ordinary care he could have stopped the truck and yielded the right of way to plaintiff, but that he negligently and carelessly failed to yield the right of way and stop the truck and avoid the collision, and that as a direct result of such negligence, the collision occurred.

The only real issue in the case, submitted by the instructions, was whether plaintiff was barred from recovery by reason of contributory negligence. Defendant does not now contend that plaintiff was contributorily negligent as a matter of law. Defendant submitted whether plaintiff was contributorily negligent by its instruction A: "The Court instructs the jury that the plaintiff, Adolph Reimers, was required under the law of Kansas to exercise ordinary care and prudence for his own safety, by looking ahead and seeing objects, automobiles and other dangers ahead of him as he drove along Chelsea Trafficway as shown by the evidence, and to exercise ordinary care and prudence to avoid any such object, automobile and other danger which he saw or could have seen by the exercise of such care and prudence. If you find from the preponderance of the evidence, therefore, that the plaintiff, Adolph Reimers, failed to exercise such ordinary care and prudence, and if you further find that such failure on plaintiff's part directly contributed to cause and did cause the collision shown in the evidence, then you are instructed that the plaintiff cannot recover and your verdict must be in favor of the defendant, Frank B. Connet Lumber Company."

While not decisive as to the sufficiency of instruction 1, it is nevertheless significant that defendant did not consider it necessary under the circumstances of instant case to hypothesize in instruction A the detailed evidentiary facts which he suggests plaintiff should have hypothesized in instruction 1, and this despite the fact that instruction A (like instruction 1) was a verdict-directing instruction.

And defendant's instruction C was: "The Court instructs the jury that if you find and believe from the evidence that the plaintiff and the defendant were both guilty of negligence, as that term is defined in other instructions, which negligence directly contributed to the collision shown in the evidence, and resulted in injury to the plaintiff, if any, then your verdict must be for the defendant." Again defendant's verdict-

·directing instruction did not submit specifically or by reference the detailed evidentiary facts suggested by defendant to guide the jury in arriving at a verdict.

And, again significantly, defendant did not offer an instruction hypothesizing any version of the facts which, if found, would have justified a verdict for defendant on the ground that defendant's truck rather than plaintiff's automobile had the right of way.

Defendant relies principally upon Rosenkoetter v. Fleer, Mo.Sup., 155 S.W.2d 157. There is nothing in that case contrary to our holding herein. That was a case involving an intersection collision wherein we held an instruction erroneous which authorized a plaintiff's verdict upon a finding that a defendant failed to stop at an intersection, regardless of where the other automobile was at the time. In the instant case, the plaintiff's car, according to the hypothesis of instruction 1, was approaching close enough that danger of collision was reasonably certain. Defendant has cited Brumback v. Simpson, Mo.Sup., 247 S.W.2d 635. We consider that case to be authority for holding plaintiff's instruction 1 in the instant case a correct instruction. See: 247 S.W.2d 638[3] where the instruction approved in the Brumback case is set out in full. We have examined the other cases cited by defendant. Nothing in any of them causes us to conclude that plaintiff's instruction 1 was erroneous under the particular facts of this particular case.

No question as to the amount of the verdict has been raised. It follows that the trial court's order granting defendant a new trial is reversed with directions to reinstate the verdict and judgment for plaintiff.

VAN OSDOL and LOZIER, CC., concur.

PER CURIAM: The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.