**James W. CARPENTER, Respondent,**

v.

**KANSAS CITY PUBLIC SERVICE COM-PANY, a Corporation, Appellant.**

**No. 47047.**

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

Rehearing Denied Jan. 11, 1960.

E. E. (Tom) Thompson, Kansas City, for appellant. Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

Aaron A. Wilson, Jr., Kansas City, Lowell L. Smithson, Spurgeon L. Smithson, Kansas City, for respondent.

HOLMAN, Commissioner.

Plaintiff received serious personal injuries when he was struck by an automobile at the intersection of U. S. Highway 24 and Brookside Avenue in Jackson County, Missouri, shortly after he had alighted from one of defendant's buses. In this action to recover damages for said injuries the jury awarded plaintiff the sum of $25,000. Defendant has appealed from the ensuing judgment. We will state the evidence in the light most favorable to plaintiff.

Highway 24 at the intersection in question was heavily traveled. It not only carried the normal traffic of a United States highway but also the intercity traffic between Kansas City and Independence, Missouri. The traffic is especially heavy in the early morning and late afternoon when many persons use said highway in going to and from work in the Kansas City-Independence area. Although not entirely accurate, the highway was considered by the parties throughout the trial as running east and west. East and westbound traffic is divided by a medial strip 18 feet wide. There were no traffic signals or other controls (applicable to east-west or U-turn traffic) at the instant intersection, which intersection was not located within any

municipality. The portion of the highway used for travel in each direction was 21 feet wide which was sufficient for two traffic lanes in each direction. There was a break in the medial strip at the intersection here involved for a distance of 113 feet which area had been paved for the use of north-south and U-turn traffic. As a warning to eastbound motorists a "bad corner" sign had been placed some distance west of the intersection.

Plaintiff had been employed as a carpenter by the Wilcox Electric Company of Kansas City, Missouri, for a number of years. He was almost 72 years of age at the time of the casualty. On June 25, 1954, he completed his day's work at about 4:30 p. m. and started for his home in Independence. He boarded a bus at 15th and Prospect and at 9th and Prospect transferred to a Mount Washington bus (No. 915), knowing that it would take him only as far as the intersection of Brookside and Highway 24 where he would again have to transfer to another bus which would take him to Independence. When the bus arrived at the intersection in question the driver started a U turn (as that was the end of his run) but stopped the bus at an angle so that the front door was approximately at the north edge of the eastbound traffic lanes and the rear of the bus was at about the center of the eastbound slab. Plaintiff testified that at that time nothing was said between him and the driver but that the driver opened the doors of the bus and plaintiff got up from his seat, paid a required additional fare, and then left the bus. The bus stop for the Independence bus was located on the southeast corner of the intersection which was southeast of the point where plaintiff left the bus. Plaintiff testified that after leaving the bus he first looked to the east toward the bus stop. He then started walking at a medium gait across the highway and looked toward the west, but because of the location of the bus could see only about 50 feet in that direction—about 20 feet beyond the rear of the bus; that he then

looked south on Brookside where he saw a car coming north at a point near the highway; that he continued walking and "was going to look around to the west to see if there was any more traffic, but before I did, I was struck by an object. I suppose it was a car."

Plaintiff had used the buses in going to and from work for a number of years and testified that he had passed this intersection twice each working day for at least five years before the accident occurred and was very familiar with the intersection.

On cross-examination he stated that when he left the bus he intended to go straight across the highway to the south; that after looking west at a time when he could see only 20 feet beyond the rear of the bus he never again looked toward the west prior to being struck; that if he had looked west when he reached a point even with the rear of the bus he could have seen 300 feet in that direction; that the highway was level for quite a distance and there was nothing to obstruct his view toward the west after reaching a point even with the rear of the bus; that he never saw the car that struck him.

A plat of the intersection offered in evidence by plaintiff shows a stop sign for traffic going north on Brookside near the intersection of Brookside with Highway 24, but plaintiff testified that he never remembered seeing that stop sign. It may be inferred from plaintiff's testimony that he sought to explain his failure to look west before passing the rear of the bus because his attention had been drawn to the car coming north on Brookside. In regard to the question of traffic at that time plaintiff testified as follows: "Q. You anticipated that traffic would be traveling east on the highway as you started to walk across the highway? A. Yes, I anticipated there might be traffic. Q. You say 'might be?' A. Well, I mean there was cars going past at that particular time."

The only other passenger on the bus at that time was Dorothy Reed who also was employed by Wilcox Electric and lived in Independence. She stated that she followed plaintiff off the bus; that plaintiff was two or three steps ahead of her and when he reached the center of the eastbound lane he was struck by the left front fender of an automobile at a point "about over the left wheel"; that the impact "bounced him around and he hit the pavement."

William E. Cerutti, the driver of the car with which plaintiff came in contact, was called as a witness for plaintiff. He stated that he drove onto Highway 24 from Tennessee Street a few blocks west of the intersection in question; that he followed the bus as he proceeded eastwardly along the highway; that there was a black car between his car and the bus; that the bus was originally in the right or south lane but prior to arriving at Brookside the bus pulled over into the left or north lane and when it arrived at the intersection it stopped in the "turn-around" headed northeast; that the black car stopped behind the bus; that when his car was about 25 feet from the rear end of the bus, going about 25 m. p. h., he saw the plaintiff coming from behind the bus and applied his brakes but his automobile came in contact with plaintiff at a point on the left front fender about six or eight inches behind the left front wheel; that the force of the impact left a dent in the fender at that point. This witness also stated that as the bus approached and entered the intersection there was no traffic which would have hindered the bus driver from driving the bus (apparently to discharge passengers) to the right side of the highway.

Plaintiff also offered in evidence certain photographs of the intersection and a number of pictures of the bus in question. A witness who made certain measurements of the bus testified that the bumper-to-bumper length of the bus was thirty-four feet five inches, its width seven feet, and the distance between the front and rear doors fifteen feet one inch.

In determining whether the court erred (as hereafter discussed) in overruling defendant's motions for a directed verdict, we will disregard defendant's evidence unless it aids the plaintiff's case. However, we have decided to state certain of defendant's evidence as it may afford a better understanding of certain evidence offered by plaintiff. It appears from a transportation bulletin issued by defendant that "Short loop buses on the Indep.-K.C. route," when arriving at Brookside Road will turn north on Brookside and make their stop to unload passengers in front of the dispatcher's station (now the bus stop) located at the northwest corner of the intersection. The driver of the bus, Virgil R. Lawson, testified that as the bus approached the intersection he drove into the north half of the eastbound lane in order to turn left at the crossover; that he turned left and stopped in the crossover to await the clearance of westbound traffic; that at that time the front door of his bus was ten feet north of the north line of the eastbound slab and the rear of the bus was three feet north of the north line of said eastbound slab; that plaintiff then asked to be let off at that point so that he could catch the bus which was then waiting at the bus stop at the southeast corner of the intersection; that he then opened the doors and plaintiff, together with Mrs. Reed, got off the bus.

Upon cross-examination this witness stated that on some occasions he had stopped the bus on the south side of the eastbound traffic lane and discharged passengers but that on the instant occasion the traffic was so heavy he couldn't turn to his right and stop on the south side of the highway. He also stated that the car driven by Mr. Cerutti was still going 30 to 35 m. p. h. when it struck the plaintiff and, contrary to all the other evidence, this witness stated that plaintiff was struck by that car when he was at a point about the middle of the front bumper.

Plaintiff's case was submitted to the jury upon the hypothesized negligence of defendant as follows: " * * * that said driver knew or in the exercise of the highest degree of care should have known that to so stop Bus 915 and cause the plaintiff to there alight would endanger the plaintiff from eastbound vehicular traffic passing by the south side of Bus 915 if plaintiff moved across said eastbound slab so to transfer to an Independence bus, and that in so stopping Bus 915 at such place and so opening the doors for passengers to there alight said driver failed to exercise the highest degree of care, and if you further find that said driver in so stopping Bus 915 at said place failed to exercise the highest degree of care to place said Bus 915 with its right-hand side as near the right-hand side of Highway 24 as practicable * *." Upon this appeal defendant contends that the court erred in overruling its motions for a directed verdict because (1) plaintiff failed to make a submissible case and (2) plaintiff was guilty of contributory negligence as a matter of law.

We are convinced from plaintiff's own testimony that he was guilty of contributory negligence as a matter of law (under the facts and circumstances disclosed) in walking into the eastbound lanes of said highway, beyond a point even with the rear of said bus, without first looking for cars approaching from the west, when, if he had looked, he could have seen for a distance of at least 300 feet and would have observed the imminent approach of the vehicle with which he collided and when he had actual knowledge of the likelihood of the approach and presence of eastbound vehicles at that very time and place. Plaintiff was quite familiar with the intersection in question as he had observed it upon approximately 2,500 occasions during the five years preceding the occurrence. He knew the highway was heavily traveled and that the traffic was particularly heavy at times (such as the instant occasion) when workers were going to and from work in that intercity area. He testified that he knew there were "cars going past at that particular time." Plaintiff is also bound to have known that the bus was so located that it would have precluded approaching drivers from seeing him until he reached a point almost even with the rear of the bus. Until he reached a point near the rear of the bus plaintiff was reasonably safe as the bus would shield him from the approaching cars. However, when he passed beyond that point he subjected himself to the danger of being struck by eastbound cars even though the drivers of said automobiles may have been exercising the highest degree of care.

Under the facts and circumstances disclosed by the evidence, it would be difficult to conceive of a more negligent act than the conduct of plaintiff in walking from behind the bus into the center of the eastbound portion of said highway without first looking to the west in order to ascertain whether any car was approaching sufficiently close to his line of travel as to create a danger of his being struck thereby. We do not think reasonable minds would differ upon the premise that a failure to look, under the circumstances, constituted a failure on the part of plaintiff to exercise ordinary care for his own safety and that such failure was negligence which directly contributed to cause his injury.

The case of Danzo v. Humfeld, Mo.Sup., 180 S.W.2d 722, involved facts similar to those in the case at bar and is specific authority for our ruling. In that case the plaintiff (who operated a nearby store and was familiar with the traffic situation) stepped from behind a parked truck into a heavily traveled street, without first looking in the direction from which vehicles would be expected to approach, and was struck by an automobile and injured. He was held to have been contributorily negligent as a matter of law. While it is true in that case that the plaintiff was not crossing the street at a regular intersection, we do not think that fact would bar the appli-

cation of the principles therein stated to the instant case. Other cases supporting our view are Thomas v. Wells, Mo.App., 299 S.W. 72; Rischeck v. Lowden, 347 Mo. 426, 147 S.W.2d 650[2]; and Russell v. Bauer-Berger Grocery Co., Mo.App., 288 S.W. 985[6].

Plaintiff, of course, contends that under the facts of this case the question of contributory negligence was for the jury. With one exception, the cases he cites in support of that contention are clearly distinguishable from the instant case upon the factual situation involved. The case of Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 206 S.W.2d 501, did not involve a motor vehicle-pedestrian situation and would appear to be wholly inapplicable. In the cases of Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W.2d 831, and Boese v. Love, Mo.Sup., 300 S.W.2d 453, no issue of contributory negligence was involved. In Parsons v. Noel, Mo.Sup., 271 S.W.2d 543, it was contended that plaintiff's decedent was guilty of contributory negligence as a matter of law in driving a motor vehicle at an excessive speed prior to its collision with a parked truck. Since that factual situation is so unlike the one in the instant case we are unable to apply the Parsons case to the situation before us. The cited case of Jackson v. City of Malden, Mo.App., 72 S.W.2d 850, might be considered as supporting plaintiff's contention. In that case plaintiff was struck by a car as she stepped from behind a truck that had been parked in the middle of the street (which was also a state highway). The Springfield Court of Appeals, without any substantial discussion of the question, held that the issue of contributory negligence was properly submitted to the jury. The facts in that case, however, were somewhat different from those in the case at bar. For example (1) the plaintiff there was walking in a safety zone provided for the use of pedestrians, (2) there was evidence that the truck was so constructed and parked in such a manner that plaintiff could not see oncoming vehicles until

she stepped from behind it, and (3) there was no indication that the street was heavily traveled. However, to the extent that the Jackson case may be construed as in conflict with the views we have expressed herein, it should no longer be followed.

Plaintiff seeks to excuse his failure to look to the westward by the assertion that this was a complicated intersection involving a number of streets, and points to our statement in Nored v. St. Louis Public Service Co., Mo.Sup., 319 S.W.2d 608, 610, that "'one cannot keep an uninterrupted watch' in all directions." Of course that statement is true but here there is no contention that plaintiff was attempting to watch any traffic except eastbound traffic on the highway (which he sought to observe at a time when he could see only 20 feet beyond the rear of the bus) and a northbound car approaching on Brookside. It should have been obvious to plaintiff that he was in no immediate danger from the car on Brookside. There is no evidence to indicate otherwise. The imminent danger to plaintiff after he left the bus was the heavy traffic approaching from the west and this danger was well known to him. Under the circumstances presented, the fact that plaintiff devoted his attention to the car approaching on Brookside will not excuse him for his failure to look for eastbound traffic on the highway before he stepped beyond the area protected by the location of the bus.

Since we have ruled that plaintiff was guilty of contributory negligence as a matter of law no purpose would be served by a discussion of the other points briefed.

The judgment is reversed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.